OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P. C., Appellant, v SHREVE CITY APARTMENTS, LTD., et al., Respondents.

First Department, June 27, 1989

## APPEARANCES OF COUNSEL

*Kurt J. Wolff* of counsel *(Diane B. Kaplan* with him on the brief; *Otterbourg, Steindler, Houston & Rosen, P. C.),* appellant *pro se.*

*David S. Elkind* of counsel *(Reboul, MacMurray, Hewitt, Maynard & Kristol,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiff, a New York City law firm, sues to recover fees allegedly owed it by defendants, nondomiciliaries, for services rendered in successfully representing them in a bankruptcy claim in the United States District Court for the Southern District of New York. Defendants admit having retained plaintiff, and paying it $43,872 upon bills rendered, but, asserting that some of the bills contained excessive and duplicative charges, refuse to pay the balance. The primary issue on this appeal is whether defendants' retention of plaintiff to render such services, coupled with their own subsequent acts in connection with the retention, gives rise to in personam jurisdiction under CPLR 302.

Defendant Shreve City Apartments, Ltd. is an Ohio limited partnership; it is not licensed to do business in New York; none of its partners reside here and it does not have any assets or employees in New York. Defendant William N. West is an Ohio resident also without any assets in New York. Defendant Mitchell R. Dukov Company is an Ohio corporation. It is not licensed to do business in New York and does not have any assets or employees here. West and Dukov Company are general partners of Shreve City.

Shreve City was the owner of an apartment complex in Shreveport, Louisiana, which, in February 1985, it sold to Nest Associates, a New York partnership. Part of the purchase price was secured by purchase-money mortgages executed in favor of Shreve City. On May 14, 1986, Nest Associ-

ates filed a chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. Shortly thereafter, Nest Associates filed an adversary proceeding in the Bankruptcy Court against the defendants herein, alleging a fraudulent conveyance with respect to the apartment complex based on a material misrepresentation as to the future occupancy rates.

On June 10, 1986, by letter from Shreve City's Cleveland counsel, plaintiff was retained to represent Shreve City's interests in the bankruptcy proceeding. The retainer was eventually expanded to include plaintiff's representation in that proceeding of West and Dukov Company as well. In August 1986, prior to answering, plaintiff moved to dismiss the complaint in the adversary proceeding. The motion remained *sub judice* for almost two years until, in June 1988, just after plaintiff instituted the within action, the Bankruptcy Court granted the motion and dismissed the proceeding against defendants. In the meantime, plaintiff continued its representation of Shreve City in the Nest bankruptcy proceeding with regard to, among other things, a certain compromise and settlement agreement, which resolved both defendants' claim against Nest Associates and most of the latter's claims against defendants, by arranging for Shreve City or its designee to reacquire the apartment complex. The agreement, which expressly stated that it was to be governed by New York law, provided for payments to be made to Nest Associates in New York.

West was an active participant for a one-year period on behalf of himself and the other defendants in the protracted negotiations with Nest Associates regarding the agreement, and was also involved in continuous negotiation and communication with plaintiff, by letter and telephone calls, with regard to the handling of the legal proceedings. He allegedly participated in at least 93 telephone calls with plaintiff, at least six of which were conference calls with representatives of Nest Associates in New York, and at least two of which were at least an hour in length. During these calls, West made proposals as to the terms of the contemplated agreement, responded to the proposals of Nest Associates, and was in general an active participant. West also participated in a 2½-hour meeting between Nest Associates' general partner, its attorneys and an attorney from the plaintiff law firm at the offices of Nest Associates' New York City attorneys. As a convenience to West, an open telephone line and speaker phone were

arranged so that he could hear and communicate with the others present.

The closing on the reacquisition of the apartment complex took place in June 1987. Approximately one month after the closing, plaintiff received a telephone call from a New York City attorney advising it that his firm was to be substituted as counsel to Shreve City, West and Dukov Company in the Bankruptcy Court adversary proceeding. Eventually, on August 10, 1987, after several other conversations with plaintiff, this attorney's firm was substituted in the adversary proceeding and plaintiff ceased performing any further legal services for defendants.

In connection with the services it rendered over the course of more than a year, plaintiff submitted 14 itemized monthly bills in the total amount of $90,212.32. Defendants retained those bills for over one year, without comment. Partial payments in the amount of $43,872.14 were made, but all payments ceased after May 15, 1987, leaving a balance due of $46,340.18.

Plaintiff also regularly rendered monthly statements of account to defendants. With regard to one such monthly statement, dated March 31, 1987, in the amount of $49,693.80, West acknowledged the account and apologized for the delay in payment. In exchange for plaintiff's promise to continue to render legal services, West represented that defendants would keep current with future bills and pay past-due bills, 50% by May 15, 1987 and the balance by June 1, 1987. Defendants did in fact make a partial payment of $25,000 on or about May 15, 1987, and plaintiff continued to render additional services and agreed to the subsequent substitution of new counsel. No future payment against that account or the outstanding bills in general was made.

■ Plaintiff thereafter commenced this action, asserting causes of action for breach of contract, in quantum meruit, account stated and fraud. In their answer, defendants alleged as an affirmative defense the court's lack of personal jurisdiction over each of them, eventually moving to dismiss on that ground (CPLR 3211 [a] [8]). Plaintiff cross-moved for summary judgment on all but its fraud claim. In granting the motion to dismiss, the motion court, citing *Haar v Armendaris Corp.* (31 NY2d 1040, *revg on dissent below* 40 AD2d 769), held that an attorney or agent may not assert jurisdiction over an out-of-State client on the basis of his own actions or services in New

York, even if those actions were undertaken at the client's specific instruction and direction. Since we believe that this determination distorts plaintiff's position, which relies, not on its own acts, but, rather, on defendants' actions in retaining it and their conduct thereafter as a basis for jurisdiction, we reverse, deny the motion to dismiss and grant, in part, the cross motion for summary judgment in plaintiff's favor.

Insofar as is relevant, CPLR 302 (a) (1) provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator", who, in person or through an agency, "transacts any business within the state", as long as the cause of action arises out of such transaction. Where the activities were purposeful and a substantial relationship exists between the transaction and the claim asserted, jurisdiction may be invoked, even if the defendant never physically enters New York. *(Kreutter v McFadden Oil Corp.,* 71 NY2d 460.) The test is whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *(Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, 457, *cert denied sub nom. Estwing Mfg. Co. v Singer,* 382 US 905.) In *Longines,* the court, after reviewing the defendant's numerous in-State activities, which included substantial preliminary negotiations through high-level personnel during a two-month period, the execution of a supplementary contract and shipment of two specially designed machines here and subsequent rendition of services in supervising the installation and testing of the machines, declined to determine the sufficiency of any one, holding instead that the amalgam of activities were more than sufficient to meet statutory, as well as constitutional standards.

In *Reiner & Co. v Schwartz* (41 NY2d 648), the Court of Appeals, citing its holding in *Parke-Bernet Galleries v Franklyn* (26 NY2d 13), sustained a finding of jurisdiction under CPLR 302 (a) (1) on the basis of a single act, namely, the defendant's presence in New York at the time of the negotiation and execution of the contract out of which the cause of action arose. *Parke-Bernet* had held that the defendant's participation in a New York auction by means of an open telephone line was a "presence", which, in combination with his active participation in the bidding, constituted the transaction of business in New York. In *Reiner,* the court was notably impressed by the "nature and quality" of the in-State contact, noting the existence of "purposeful activity in New York

directed toward and resulting in the establishment of a contractual relationship" as opposed to "a casual attempt * * * to look into or smooth out difficulties" (41 NY2d, at 654).

Here, defendants' participation in a meeting in New York through West's use of an open telephone line during which he made and responded to proposals as to the terms of the contemplated agreement and was, generally, actively involved, as well as the numerous letters and telephone calls, rises to the level of purposeful activities required for CPLR 302 (a) (1) jurisdiction. Indeed, it has been held that the retainer by a nondomiciliary defendant of attorneys for the purpose of legal representation in this State is a purposeful transaction of business within the State sufficient to confer jurisdiction pursuant to CPLR 302 (a) (1). *(Elman v Belson,* 32 AD2d 422.)

We need not, however, reach the issue of whether the retention of New York counsel to provide services in connection with legal proceedings in this State, without more, is sufficient to confer jurisdiction on the courts of this State in any action brought by the attorneys to recover their fees for such services since, as this record demonstrates, defendants did more than merely retain plaintiff. They communicated with plaintiff by means of at least 93 telephone calls, many of which were originated by them, as well as by letters sent by them into the State. In addition to these letters and telephone calls, they participated in settlement negotiations relating to the pending legal proceedings by telephone conference calls with representatives of Nest Associates and an open telephone line into a meeting in New York. They settled various aspects of the bankruptcy proceedings pending in New York, entering into an agreement which provided not only that it was to be governed by the laws of the State of New York but also that defendants were to make payments to Nest Associates in New York. They also retained other attorneys in New York to terminate their contractual relationship with plaintiff, and procure plaintiff's execution of a stipulation of substitution. At defendants' behest, this other New York law firm thereafter continued to provide legal services for them in New York. These various activities, coupled with defendants' initial retention of plaintiff to represent them in the New York bankruptcy proceeding, demonstrate their engagement in purposeful activity in this State in connection with matters involved in this lawsuit.

In *Elman v Belson* (32 AD2d 422, *supra),* a firm of attorneys sued their former client, a nondomiciliary, to recover for legal

services rendered in his behalf in a New York lawsuit in which he had been a party. His out-of-State attorneys had come to New York and retained plaintiffs to bring an action on two previously procured foreign judgments. The defendant claimed that the New York court lacked jurisdiction and successfully moved to dismiss. In reversing, the Second Department noted, "The test is whether the defendant has engaged in 'some purposeful activity in this State in connection with the matter in suit' * * *. The transaction of business is not narrowed to a strict commercial sense; the execution of a separation agreement * * * and the making of a retainer for legal services * * * are both activities within the scope of the term." (Supra, at 425.) In upholding jurisdiction, the court held, "The final standard for jurisdiction is reasonableness—whether the defendant is unfairly burdened by the compulsion to contest a suit in a forum outside his domicile * * *. It does not appear unfair to us, within the confines of the statute (CPLR 302, subd. [a]), to require the defendant to respond in New York to the plaintiffs for services resulting in a judgment on his behalf rendered in New York." (Supra, at 426.)

Of course, Elman (supra), which relied solely on a single act for jurisdiction, might arguably support defendants' position in that there the plaintiff was retained to bring a lawsuit in New York in the defendant's behalf, while here plaintiff was retained to defend a proceeding. In the circumstances, however, we do not believe that the jurisdictional issue should be treated differently. Defendants' active and sustained immersion in the bankruptcy proceeding, including the assertion of their rights as creditors, is a sufficient predicate for the exercise of CPLR 302 (a) (1) jurisdiction.

Haar v Armendaris Corp. (31 NY2d 1040, supra), upon which defendants rely, is distinguishable. Haar held that the negotiations in New York by the attorney plaintiff with a third party in behalf of the nondomiciliary defendant were an insufficient basis for the exercise of CPLR 302 jurisdiction over the defendant in an action to recover legal fees. The nondomiciliary defendant in Haar, however, was not shown to have communicated extensively with the plaintiff in New York or to have participated in a crucial meeting in New York by means of an open telephone line. The dissent at the Appellate Division (40 AD2d 769, 770, supra), which the Court of Appeals adopted in dismissing the complaint, focused in large measure on the defendant's lack of purposeful activity

within the State, and observed that the plaintiff was relying on his own activities within the State, rather than on the defendant's independent activities. *(Supra,* at 770.)* That is not the case here.

As to the merits, defendants allege only that plaintiff's fees were "duplicative, excessive and unnecessary". They fail completely, however, to provide any proof. Conclusory assertions alone are insufficient to defeat a motion for summary judgment. *(Zuckerman v City of New York,* 49 NY2d 557, 562; *also, Dynamics Corp. v Marine Midland Bank,* 69 NY2d 191, 197.)* Since defendants have failed to present any evidentiary material sufficient to raise a triable factual issue in its defense of the contract, quantum meruit and account stated claims, plaintiff is entitled to summary judgment thereon, at least as to liability. It is further entitled to judgment on the account stated claims. Since, however, there is an overlapping of these claims, we award judgment only on the amount sought in the third cause of action, which is the greater. The breach of contract and quantum meruit claims require an assessment before damages may be awarded.

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered January 5, 1989, which, *inter alia,* granted defendants' motion to dismiss the complaint for lack of jurisdiction and denied plaintiff's cross motion for summary judgment on the first, second, third and fourth causes of action, should be reversed, on the law, with costs and disbursements, the motion denied, the complaint reinstated, the cross motion granted to the extent of awarding plaintiff summary judgment in the sum of $41,740.93 on the third and fourth causes of action and partial summary judgment on liability only on the first and second causes of action, and the matter remanded.

ASCH, MILONAS, KASSAL and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on January 5, 1989, unanimously reversed, on the law, the motion denied, the complaint reinstated, the cross motion granted to the extent of awarding plaintiff summary judgment in the sum of $41,740.93 on the third and fourth causes of action and partial summary judgment on liability on the first and second causes of action, and the matter remanded. Appellant shall recover of respondents $250 costs and disbursements of this appeal.