**PAINEWEBBER INCORPORATED, Plaintiff,**

v.

**The WESTGATE GROUP, INC., and UCP Holdings Inc., Defendants.**

**No. 89 Civ. 5618 (RWS).**

United States District Court, S.D. New York.

Sept. 21, 1990.

Paul, Weiss, Rifkind, Wharton & Garrison (Lewis R. Clayton, Clifford Peterson, of counsel), New York City, for plaintiff.

Kelly & Roth (William H. Roth, of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendant, The Westgate Group, Inc. ("Westgate"), has moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of jurisdiction over the person or, alternatively, pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Northern District of Texas. For the reasons set forth below, the motion is granted in part.

## PRIOR PROCEEDINGS

Plaintiff PaineWebber Incorporated ("PaineWebber"), a citizen of New York, brought this diversity action on August 21, 1989, alleging that Westgate, a citizen of Texas, had failed to pay PaineWebber in excess of $740,000 allegedly due for financial advice given under an agreement entered into by Westgate in connection with its planned acquisition of United Concrete Pipe Corporation. Westgate answered on September 12, 1989, asserting among other things, that the Court lacked personal jurisdiction. On September 22, 1989, Westgate moved to dismiss for lack of personal jurisdiction over Westgate or to transfer the action to Dallas, Texas pursuant to 28 U.S.C. § 1404.

## FACTS

The facts are not in dispute. Westgate is a Texas corporation, which, up through the date of the service of process, maintained its principal place of business in Dallas, Texas.[1] Westgate brokers real estate transactions and acts as an advisor to real estate investors. It has never engaged in this business or any other business in New York State. Westgate does not maintain a New York office, phone listing or bank account nor does it solicit business in New York. None of the real estate transactions which it brokered or as to which it acted as advisor occurred in New York or involved New York property.

In November of 1988, Westgate's President C. Frederick Wehba ("Wehba") was introduced to a representative of the Dallas office of PaineWebber. The introduction occurred in Dallas. After negotiations in Dallas, the parties agreed that PaineWebber would act as Westgate's financial adviser in Westgate's attempt to purchase United Concrete Pipe Corporation ("United Pipe"). PaineWebber and Westgate executed an engagement letter in Texas, typed on PaineWebber's Dallas office stationery.

A PaineWebber representative from the Dallas office accompanied Westgate's president to negotiating sessions with United Pipe's owner, Hillsborough Holding Corporation ("Hillsborough"). Hillsborough is a Delaware Corporation with a principal place of business in Tampa, Florida and United Pipe is and was a Delaware corporation with facilities in Texas, Utah, and California. Neither company was located in New York. During the course of the representation, a PaineWebber representative from Dallas accompanied Westgate's president on negotiations or inspection visits related to the United Pipe facilities in Texas, Utah and California.

In the engagement letter, PaineWebber agreed to use best efforts to raise financing for the purchase of United Pipe. Westgate is aware of only one contact that PaineWebber made in furtherance of this obligation and that was to solicit a Citicorp subsidiary in Dallas to provide financing for the purchase.

Eventually an agreement was reached whereby a newly-formed corporation, UCP Holdings, Inc. ("UCP Holdings"), wholly-owned by Wehba, agreed to purchase the shares of United Pipe. This purchase contract was negotiated and executed in Dallas. Westgate, although not the purchaser of United Pipe, was a signatory to the purchase agreement in Texas. Westgate is not a shareholder of UCP Holdings, and does not play any role in its operations.

Westgate claims that the sole contact with New York was purely fortuitous and wholly unrelated to the instant claim: Hillsborough was represented by the law firm of Simpson, Thacher & Bartlett and for the convenience of Hillsborough and its counsel, the closing in New York of Hillsborough's sale of United Pipe was held in Simpson Thacher's New York offices. The purchaser of United Pipe at the closing was not Westgate but UCP Holdings. At the closing the parties signed a modification of the Purchase Agreement. The modification had no relation to the underlying claim in this suit.

PaineWebber alleges that Westgate engaged PaineWebber precisely because PaineWebber was a New York investment banking organization and because the underlying transaction was primarily a New York transaction. Westgate sent numerous telecopies and faxes regarding financial data and an additional real estate matter to PaineWebber's New York offices through the relevant time period in furtherance of the contract with PaineWebber and involving New York. PaineWebber similarly sent materials to Westgate from its New York Office. Westgate and PaineWebber's New York Office exchanged phone calls relating to the transaction several times each week. PaineWebber performed various services, including document reviews, revision of an LBO model, dissemination of information and advisory services, on behalf of Westgate from its New York Office. Finally, PaineWebber provided advising services to Westgate during

---

1. Westgate has since established a principal place of business in Los Angeles.

the closing of the purchase of UCP Holdings, Wehba's wholly-owned acquisition company.

The Purchase Agreement in this transaction refers to "Buyer, Westgate and Wehba" as a group. Westgate and Wehba both were parties to the Stock Purchase Agreement and Wehba was the sole stockholder of Westgate and of UCP Holdings. Wehba guaranteed the loans taken out by UCP Holdings and at the closing, Wehba and both of his corporations entered into a second agreement with the seller in which Wehba, Westgate, and UCP Holdings were collectively defined as the "Buyer." The agreement provided for a payment, on the closing date of 2.5 million to "Buyer"—Wehba, Westgate and UCP Holdings.

## PERSONAL JURISDICTION

█ A federal court in a diversity action must look at the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether *in personam* jurisdiction exists over a nonresident defendant. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–25 (2d Cir.1963) (en banc)). If the relevant statute allows the court to exercise jurisdiction then the court must determine "whether the exercise of jurisdiction comports with due process." *Id.* (citation omitted). In the present action the forum state is New York and PaineWebber alleges that Westgate is subject to jurisdiction under Civil Practice Law and Rules (C.P.L.R.) § 302(a)(1).[2] In a motion to dismiss for lack of jurisdiction, the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

### A. New York Long–Arm Jurisdiction

█ Under C.P.L.R. § 302(a)(2) the relevant two-part test is whether Westgate

has transacted business in New York and whether the cause of action arises out of the subject matter of the business transacted. Because PaineWebber has been afforded extensive jurisdictional discovery it must establish jurisdiction by a preponderance of the evidence. *Hvide Marine Intern. v. Employers Ins. of Wausau*, 724 F.Supp. 180, 182 (S.D.N.Y.1989) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984)).

### B. Westgate Did Not Transact Business in New York.

█ To determine whether Westgate transacted business in New York within the meaning of § 302 it is necessary to determine whether Westgate "purposefully avail[ed] [itself] of the privilege of conducting business within [New York] thus invoking the benefits and protections of its laws." *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y. S.2d 34, 38, 229 N.E.2d 604, 607 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) (same). New York law looks to the totality of circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy, *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied sub nom. Estwing Mfg. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *Bower v. Weisman*, 639 F.Supp. 532, 536 (S.D.N.Y.1986), and whether the defendant has sufficient minimum contacts with New York such that it should reasonably expect to be called to New York to defend its actions in the courts of this forum. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460,

**2.** C.P.L.R. § 302(a)(1) provides in pertinent part:

§ 302. Personal jurisdiction by acts of non-domiciliaries.

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

527 N.Y.S.2d 195, 198, 522 N.E.2d 40, 43 (1988). New York long-arm jurisdiction, however, is not congruent with "the full jurisdictional potential permissible under the federal constitution." *Hedlund v. Products from Sweden, Inc.*, 698 F.Supp. 1087, 1090 (S.D.N.Y.1988) (citing C.P.L.R. § 302 Practice Commentary at 60 (McKinney 1972)).

■ The cause of action arises out of Westgate's refusal to pay for PaineWebber's allegedly deficient performance. This was a contract for financial services, specifically, the services of a large New York investment bank. At the time of engagement Westgate dealt exclusively with members of the PaineWebber Dallas Office but contemplated that engagement of a big New York investment house would mean the full availability of the entire firm's resources. In its engagement letter, PaineWebber undertook to perform two tasks for Westgate: 1) to assist in the negotiations with Hillsborough and 2) to arrange the financing of the purchase between UCP Holdings and· Hillsborough. The negotiations with Hillsborough took place in Florida and Texas, never in New York. PaineWebber made no efforts to arrange financing from any New York source. PaineWebber did undertake its service efforts in New York, but the focus of a C.P.L.R. § 302 inquiry is on what defendant *Westgate* did in New York in connection with the cause of action. *See Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973) (Agent's New York acts are not basis for jurisdiction over foreign defendant-client).[3]

Westgate's activities with respect to New York can be summarized as a series of frequent telephone calls and telecopies and the one meeting during which a modification of the agreement was memorialized. These activities are insufficient to meet the "transacting business" standard and, even

if they did, the cause of action does not arise from these contacts.

### 1. The Telephone Calls and Telecopies are Insignificant

■ "It is well-established that it is the 'nature and quality', and not the amount of New York contacts which determine the issue...." *Standard Enterprises, Inc., v. Bag–It, Inc.*, 673 F.Supp. 1216, 1220 (S.D.N.Y.1987) (toll free phone calls, written communication, and invoices individually or in aggregate fail to constitute adequate basis for *in personam* jurisdiction) (quoting *Development Direction, Inc. v. Zachary*, 430 F.Supp. 783, 783 (S.D.N.Y.1976)). This is not the situation, as PaineWebber suggests, where the defendant projects itself into business transactions in New York by telephone or mail. *See Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (where defendant participated in auction by telephone, thereby projecting himself into the auction room to compete with other purchasers); *Ehrlich–Bober & Co. v. University of Houston*, 49 N.Y.2d 574, 427 N.Y.S.2d 604, 404 N.E.2d 726 (1980) (where defendant projected itself by letters and calls into market activity ongoing in New York). Instead, the facts presented here are more akin to those in *Mayes v. Leipziger*, 674 F.2d 178, 184–85 (2d Cir.1982) and *Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968) where correspondence between New York brokers and nondomiciliary defendants was not found to confer jurisdiction because contacts were not designed to permit defendants to conduct activity in New York.

### 2. The Modification of the Purchase Agreement in New York

■ Westgate did not purchase United Pipe in New York; UCP Holdings made that purchase and did so without the assist-

**3.** PaineWebber's reliance upon *Wichita Fed. Sav. & Loan Ass'n v. Comark,* 586 F.Supp. 940 (S.D.N.Y.1984), *aff'd,* 810 F.2d 1161 (2d Cir. 1984) is unavailing. In *Wichita,* the court found that the nondomiciliary general partner defendants were subject to long-arm jurisdiction (through the activities of the partnership) if the activities of general partners in the limited partnership were subject to jurisdiction in New York. Under CPLR 302 neither an agent nor an independent contractor's activities are to be attributed to the non-domiciliary defendant in an action between the two.

ance of Westgate. Although Westgate was a signatory to the purchase agreement between UCP Holdings and Hillsborough, that purchase contract was fully negotiated in Texas and Florida and executed in Texas. Westgate agreed to a minor modification of the purchase agreement in New York.

■ In-state execution of a minor contractual provision—or, as here, a memorialization of a previously agreed-upon term—does not rise to "transacting business" under C.P.L.R. § 302(a)(1). *Presidential Realty Corp. v. Michael Square West, Ltd.,* 44 N.Y.2d 672, 405 N.Y.S.2d 37, 376 N.E.2d 198 (N.Y.1978) (New York signing of modification letter and agreement with respect to out-of-state transaction was not "transacting business"); *see also Galgay v. Bulletin Co., Inc.,* 504 F.2d 1062, 1065 (2d Cir.1974) (non-resident defendant did not "transact business" in New York when it executed a sales contract in New York, but did not negotiate it in New York).

### 3. *Hiring a "New York" Company*

■ PaineWebber attributes great jurisdictional significance to Westgate's desire to hire a "New York" investment bank and relies heavily on *Otterbourg, Steindler, Houston & Rosen P.C. v. Shreve City Apartments Ltd.,* 147 A.D.2d 327, 543 N.Y.S.2d 978, (N.Y.A.D. 1 Dept.1989) in support of this position. In *Otterbourg,* out-of-state limited partners retained a New York law firm and none of these defendants set foot in New York in connection with the representation. The defendant did, however, engage "in continuous negotiation and communication with plaintiff, by letter and telephone calls with regard to the handling of the legal proceedings." *Id.* 543 N.Y.S.2d at 979.

The nondomiciliary in *Otterbourg,* however, retained the New York Office of a New York firm to represent it in a New York bankruptcy of a New York debtor and then, unlike the instant case, engaged in conference call negotiations with the debtor regarding the bankruptcy, purposely availing themselves of the New York forum through the telephone. *Id.* 543 N.Y.

S.2d at 979–980 ("defendants' participation in a meeting in New York through use of open telephone line during which he made and responded to proposal as to the terms of the contemplated agreement ... rises to the level of purposeful activities required for CPLR 302(a)(1) jurisdiction ..."). Moreover, the nondomiciliary defendant consented to jurisdiction of the New York bankruptcy court by filing a claim against the bankrupt estate. Finally, the *Otterbourg* Court specifically declined to address whether the retention of New York counsel in connection with legal proceedings in New York, without more, conferred jurisdiction. Here, that question is not even presented because Westgate retained a New York investment house for efforts to be directed *outside* of New York. *See also Kazlow & Kazlow v. A. Goodman & Co.,* 92 Misc.2d 1084, 402 N.Y.S.2d 98 (App.T. 1st Dept.1977) (defendant, by its Chicago counsel, conferred with plaintiff, its then New York lawyer, over a period of 3 years concerning management of litigation proceeding in New York).

Westgate's desire to get a big "New York" Investment house is not a purposeful availment of New York as a forum just as "Get me a New York lawyer," without more, is not an invocation of *in personam* jurisdiction in the forum state of the lawyer's practice. *See Strasser Spiegelberg Fried & Frank v. Schlesinger,* 53 Misc.2d 78, 278 N.Y.S.2d 427 (Sup.Ct., N.Y.County 1967) (defendant went to New York to retain plaintiff); *Reiner v. Durand,* 602 F.Supp. 849 (S.D.N.Y.1985) (defendant visited New York various times and the retainer was signed in New York); *Jecies v. Matsuda,* 503 F.Supp. 580, 582 (S.D.N.Y. 1980) (on-going relationship between attorney-plaintiff and defendant-client and plaintiff was retained by defendants at his New York office). Westgate engaged PaineWebber in Dallas and it was only after this engagement did PaineWebber close its Dallas investment banking office and require Westgate to communicate with PaineWebber in New York.

Moreover, throughout this engagement, Wehba allegedly was under the impression

that Hollingsworth, PaineWebber's investment banker assigned to this transaction, would continue working in the Dallas Office and was only on visits to New York headquarters when reached there. Westgate never directed or requested PaineWebber to perform services in New York. PaineWebber was hired to assist in the negotiations with Hillsborough and no such negotiations occurred in New York. PaineWebber was hired to arrange for the financing of the purchase and no efforts in that direction were undertaken in New York. Westgate wanted PaineWebber—a "New York" bank, not because it was in New York but rather because the adjective "New York" connoted the big leagues, the wealth of contacts, the depths of resources, PaineWebber's position in the industry— not its geographic location.[4]

Westgate's New York activity is analogous to the defendant in *McAny, Inc. v. Capionato Corp.*, 89 Civ. 4528 (JFK), 1989 WL 120191 (October 3, 1989) where the broker sued to collect a commission for a transaction allegedly put together between the out-of-state defendant and an out-of-state bank. Relying on "telephone calls" to and from [plaintiff's] New York office and "ongoing interstate correspondence" as well as two in-state meetings, McAny argued on the basis of *Otterbourg* that jurisdiction existed. Judge Keenan dismissed the action for lack of jurisdiction because the New York contacts were insufficient to meet the "transacting business" standard.

The contacts with New York do not establish jurisdiction because they were not a purposeful availment, on Westgate's part, of New York as a forum in which to conduct business. Westgate did not hire a New York bank because it sought to do business in New York.

## C. Cause of Action Does Not "Arise Out of" New York Contacts

 Even had Westgate been "transacting business" in New York, PaineWebber could not meet the second part of the CPLR § 302 test and bring this case in New York because there is no "substantial relationship" between Westgate's New York activities and the instant cause of action. *See Hoffritz for Cutlery, Inc.*, 763 F.2d at 59–60; *see also Hvide Marine Intern.*, 724 F.Supp. at 183 ("New York law requires 'some "purposeful activities" within the State' and 'the existence of an articulable nexus between the business transaction and the cause of action sued upon.'") (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 271–72, 437 N.Y.S.2d 643, 644–45, 419 N.E.2d 321, 322–23 (1981)). The execution

---

**4.** The current test for personal jurisdiction—as formulated in the minimum contacts/purposeful availment approach—focuses on the fairness and the nature of a defendant's contact with the forum state, not the defendant's contact with the plaintiff. *International Shoe v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ("Th[e due process] clause does not contemplate that that state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. *Cf. Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 . . .") (1877). McKinney's CPLR Supplementary Practice and Commentaries C302:3 1990 Supplementary Pamphlet at 47. ("Whatever Asahi stands for, it is clear that the constitutional test for in personam jurisdiction is reverting to its common law origins and is focusing more upon the defendant's voluntary contacts with the forum than upon plaintiff's interest in suing in that forum."); *see* Kogan, "A Neo–Federalist Tale of Personal Jurisdiction," 63 S.Cal.L.Rev. 257, 363–72 (1990). Given the advance of modern telecommunications and a diminishing importance of state

boundaries in commerce, the focus on fairness as constituted in *International Shoe* and characterized in *Hanson v. Denckla* and their progeny appears insufficient in situations similar to the present case where a defendant may never "purposefully avail" itself of a forum and yet the forum, especially a financial service capital like New York, would have a substantial interest in asserting jurisdiction over the case because of the forum's relation to the plaintiff, and the "fairness" of asserting jurisdiction over a defendant who does not seek a New York transaction of business but a business transaction that benefits from the participation of a party subject to the regulations of and competing in the environment governed by New York, the forum state. This indirect invocation of the forum—the benefits and protections of its laws—grows increasingly common and yet the New York Courts' rejection of the use of an agent's or independent contractor's acts on behalf of the principal or contractor to be "counted" towards the principal's contacts or availment under CPLR 302 combines to preclude a different result.

of the modification is at best tangential to the instant cause of action. *Compare Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040 (S.D.N.Y. 1987) (where meetings in forum state directly relate to matters central to litigation, the defendants alleged lack of performance under the agreement). PaineWebber has sued to collect fees for advisory services it allegedly provided outside of New York. Westgate's acts had no significance with respect to PaineWebber's alleged breach of the contract for services and PaineWebber is unable to articulate any such nexus. Accordingly, the suit is dismissed for lack of *in personam* jurisdiction and the motion for transfer is not reached.

Finally, the behavior during discovery was neither exemplary nor sanctionable. The request for sanctions is denied.

This case is dismissed. Settle Judgment on notice.

It is so ordered.