(March 13, 2007)

■ GABRIEL FISCHBARG, Respondent, v SUZANNE DOUCET et al., Appellants. [832 NYS2d 164]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 24, 2005, which denied defendants' motion to dismiss the complaint for lack of personal jurisdiction, affirmed, without costs.

Plaintiff Gabriel Fischbarg is a lawyer and solo practitioner who lives and works in New York City. Defendant Suzanne Doucet is a California resident and the president of Only New Age Music, Inc. (ONAM), a California corporation. In early 2001, plaintiff received a call from Doucet. Based upon this call, plaintiff agreed to research and pursue potential claims for copyright infringement that ONAM may have had against nonparty Allegro Corporation (Allegro). On February 23, 2001 Doucet sent a letter to plaintiff at his New York office. The letter stated:

"Thank you for offering to help us with our legal efforts concerning [Allegro]. Our understanding is that you offered to take this case on contingency.

"Our understanding is also, that we only have to pay a deposit of $2000 against expenses, if you go forward with this case after reviewing our material. After settlement in or outside of court the moneys received from Allegro will be split $1/3$ (you) $2/3$ us, after the deduction of expenses incurred [by] both parties. Expenses will be reimbursed before split.

"Please find enclosed the requested information (contracts, copyrighted material, outline of events, and copies of correspondence) regarding Allegro's fraudulent and infringing activities, which we discovered first in May 1999.

"Our previous attorney, Gerry Weiner said he would be happy to forward all materials regarding the history of this case to you, when needed. His material includes also CDs that we purchased for proof of their violations and all related other materials." In the letter, Doucet also informed plaintiff that it thought ONAM might have to cancel all their agreements with Allegro; confiscate certain unauthorized reproductions of ONAM's property; and demand disclosure of "accounting, negotiations and legal procedures" regarding Allegro's use of ONAM property. Doucet wrote that Allegro had committed fraud, copyright infringement, and breach of contract. At its conclusion, the letter thanked plaintiff for "your time and consideration to look at this complex issue."

In May 2001, defendants were sued by Allegro in federal district court in Oregon. Plaintiff was admitted pro hac vice in Oregon, and he represented defendants there from May 2001 to January 2002. However, plaintiff physically never appeared in Oregon and did all of his work in the Oregon lawsuit in New

York. He took and defended depositions, appeared at court conferences, and argued defendants' motion for summary judgment *all by telephone.* His time sheets, which are in the record, itemize 238.4 hours of legal work, all performed by plaintiff on defendant's behalf in New York.

In August 2002, after a fee dispute, defendants discharged plaintiff. Plaintiff made an application to the Oregon court in the pending litigation to order payment of his fees. But that court held that it did not have personal or subject matter jurisdiction to determine whether plaintiff should be awarded the approximately $60,000 claimed due. Plaintiff thereafter brought this action in New York to recover that sum.

As a jurisdictional predicate for his claims against defendants, plaintiff relied on CPLR 302 (a) (1), New York's long-arm statute. Defendants moved to dismiss the action for lack of jurisdiction, pursuant to CPLR 3211 (a) (8).

The IAS court found that it had personal jurisdiction over the defendants, under the long-arm statute, because: (1) defendants solicited plaintiff in New York to provide them with legal advice; (2) plaintiff was thereafter consulted in New York, at least twice a week for approximately a year, for legal advice which included the drafting of pleadings and conducting discovery in the Oregon action; and (3) this action concerns fees for the exact services solicited and performed by plaintiff with respect to the copyright dispute with Allegro for which he was retained. Defendants appeal.

It is defendants' contention that they are not subject to jurisdiction in New York under the long-arm statute because they never physically came to New York. They argue that they never physically met with plaintiff; plaintiff was retained by a California corporation with respect to a claim against it by Allegro, an Oregon corporation; and plaintiff conducted a portion of ONAM's defense in an Oregon federal court.

Plaintiff opposes, arguing, pro se, that defendants' retention of him, a New York solo practitioner, and his subsequent work as counsel on defendants' behalf in New York were sufficient to confer jurisdiction over the defendants under CPLR 302 (a) (1). We agree and thus affirm.

CPLR 302 (a) (1), entitled "Personal jurisdiction by acts of non-domiciliaries," provides:

"(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

"(1) transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." New York courts have interpreted this section to require, "some articulable nexus between the business transacted and the cause of action sued upon" (*McGowan v Smith*, 52 NY2d 268, 272 [1981]). In cases involving an out of state party's retention of a New York attorney, jurisdiction has been upheld where a defendant, beyond merely retaining a lawyer in New York, has purposely availed itself of the services of that New York lawyer in this state (*see Pennie & Edmonds v Austad Co.*, 681 F Supp 1074, 1077 [SD NY 1988] [although litigation took place in Maryland, defendant's participation, through an agent in the preparation for that litigation in New York, was sufficient to confer personal jurisdiction for purposes of the long-arm statute]; *and see Kelly v MD Buyline, Inc.*, 2 F Supp 2d 420, 430 [SD NY 1998] [although retainer agreement was signed in Texas, there was a factual basis for long-arm jurisdiction over one defendant based upon that defendant's contacts with its attorney in New York, and subsequent New York litigation]).

The facts of this case support the conclusion that Doucet and ONAM had sufficient contacts with plaintiff in New York to subject them to jurisdiction here for purposes of determining their fee dispute. Defendants sought out plaintiff, previously unknown to them, in New York to perform legal services. At the time plaintiff was retained, it was not known whether defendants' difficulties with nonparty Allegro would result in litigation. Nor was it known that the litigation would take place in an Oregon court. Allegro did not bring suit against defendants in Oregon until three months after plaintiff was retained and had begun to work for defendants in New York. Throughout plaintiff's representation, defendants made frequent phone calls to plaintiff in New York, and sent their e-mails and fax communications to him in New York. They made their payments to plaintiff's office in New York, where they consulted plaintiff about their lawsuit and formulated and executed their litigation strategy.

Plaintiff has submitted itemized billing records for 238.4 hours of legal work, performed in conjunction with defendants and on their behalf. All of this work was done from plaintiff's New York office, including telephone depositions and phone conferences with the court in Oregon. Indeed, while plaintiff and his clients worked closely together in defense of the Allegro lawsuit in Oregon, all of plaintiff's actions on his California clients' behalf took place in New York. A review of plaintiff's time logs, which support this action for fees, clearly shows that

defendants' contacts with plaintiff, their New York counsel, were neither insubstantial nor sporadic (*cf. Haar v Armendaris Corp.*, 31 NY2d 1040 [1973], *revg on dissenting op of Capozzoli, J.*, 40 AD2d 769, 769-770 [1972]). By working with plaintiff on a consistent basis during the period in question, defendants "transacted business" in New York sufficient to subject themselves to this State's jurisdiction over them in this fee dispute (*Kaczorowski v Black & Adams*, 293 AD2d 358 [2002]).

Contrary to the dissent's view, *Kaczorowski* is not in conflict with precedent, but in fact consistent with the controlling law. The matter is directly on point and supports our determination here. In *Kaczorowski*, we stated: "In view of the evidence demonstrating that plaintiff was solicited by defendant in New York for the purpose of rendering legal services; that, subsequent to his retention by defendant, plaintiff was repeatedly consulted in New York by defendant respecting the matter in which he was retained; and that the present action was brought to obtain payment for services rendered by plaintiff in the very matter in connection with which plaintiff was solicited and retained by defendant, plaintiff has sufficiently established that defendant is subject to the jurisdiction of New York courts in this action pursuant to CPLR 302 (a) (1)." (293 AD2d at 358 [citations omitted].)

With the evolution of technology, it is clear that physical presence alone should not determine whether one has purposely availed itself of a state's rights and benefits for jurisdictional purposes. One court has recognized this fact, stating "lawyers and other professionals today transact business with their pens, their fax machines and their conference calls—not with their feet" (*see Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez*, 171 F3d 779, 787 [2d Cir 1999]). Indeed, the notion that a party need not have a physical presence in New York to be subject to CPLR 302 (a) (1) jurisdiction is long recognized. In 1970, our Court of Appeals held that "one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State" (*Parke-Bernet Galleries v Franklyn*, 26 NY2d 13, 17 [1970]). Thus, it is not determinative that defendants were not physically present in New York (*see Pilates, Inc. v Pilates Inst., Inc.*, 891 F Supp 175, 179 [SD NY 1995] ["defendant need not actually enter New York to be viewed as transacting business in the state (under CPLR 302 [a] [1])"]).

Nor does the fact that the litigation took place in Oregon, not

New York, preclude plaintiff from suing his clients in New York for his fees (*cf. Colucci & Umans v 1 Mark*, 224 AD2d 243 [1996] [CPLR 302 (a) (1) jurisdiction based upon out of state defendant's retention of New York lawyer to handle litigation in New York court]; *Otterbourg, Steindler, Houston & Rosen v Shreve City Apts.*, 147 AD2d 327 [1989] [same]; *Elman v Belson*, 32 AD2d 422 [1969] [same]; *see generally Liberatore v Calvino*, 293 AD2d 217 [2002] [Rhode Island attorney subject to New York's long-arm statute based upon his actions preceding the filing of an untimely complaint in a New York court]).

It is defendants' actions, requesting plaintiff to do substantial work for them in New York, which makes defendant subject to New York jurisdiction. Defendants "projected themselves" into this state by calling plaintiff, who did not know them, consulting him, writing to him, sending him voluminous documents, and then retaining him as their lawyer. ONAM, through Suzanne Doucet, sought out plaintiff, a New York attorney, in New York, for legal guidance and representation, and to protect ONAM's intellectual property interests. Plaintiff did work in New York to assist defendants with their legal predicament, which eventually resulted in litigation. It was defendants, who, along with their February 23, 2001 letter, sent plaintiff in New York "contracts, copyrighted material, [an] outline of events, and copies of correspondence." This was part of the lawyer-client relationship and only one of a number of purposeful acts by which defendants projected themselves into this state, and all of these acts are directly related to plaintiff's claim for fees (*see Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443, 457 [1965], *cert denied sub nom. Estwing Mfg. Co., Inc. v Singer*, 382 US 905 [1965]).

Requiring defendants to defend this fee dispute in New York does not, in the circumstances, offend "traditional notions of fair play and substantial justice" (*Calder v Jones*, 465 US 783, 788 [1984], quoting *International Shoe Co. v Washington*, 326 US 310, 316 [1945]). Defendants purposely availed themselves of the services of a New York attorney. Defendants had plaintiff do extensive work for them, plaintiff's records indicating over 238.4 hours, all in New York, and had plaintiff work for them exclusively from New York, even while defending them in the Oregon action. In fact, because plaintiff did not travel, defendants saved substantial sums. Under the circumstances, defendants should have anticipated being called into a New York court to litigate this action for fees. Concur—Mazzarelli, J.P., Friedman and Marlow, JJ.

Sullivan and Catterson, JJ., dissent in a memorandum by Sul-

livan, J., as follows: This appeal presents the issue of whether defendants' telephone calls, e-mails and faxes from California to New York to plaintiff, a New York attorney, limited to plaintiff's retention and representation of defendants in an action pending against them in Oregon, were sufficient to confer long-arm jurisdiction in New York. Since the weight of authority holds that such contacts are insufficient to confer jurisdiction over defendants, who never appeared in New York with respect to plaintiff's retention or representation of them in the proceeding in Oregon, I would grant the motion to dismiss this action to recover legal fees allegedly due plaintiff for his defense of defendants in the Oregon action.

Defendant Only New Age Music, Inc. (ONAM) produces, publishes and consults for musical artists and record companies, as well as sells and distributes musical recordings, particularly of the "new age" music genre. Defendant Suzanne Doucet is ONAM's principal. On February 23, 2001, ONAM in California, through Doucet, placed a telephone call to plaintiff, to whom it had been referred, in New York concerning plaintiff's possible representation of ONAM in connection with a copyright infringement claim it had against Allegro Corp., an Oregon corporation with which ONAM had entered into one or more agreements for the licensing of certain of ONAM's musical recordings. During their conversation, plaintiff agreed to represent ONAM in its claim against Allegro on a contingency basis of one third of any recovery against Allegro. Plaintiff did not prepare a retainer statement; instead, ONAM, by letter dated the same day, wrote to plaintiff confirming their fee arrangement and thereafter paid plaintiff a $2,000 advance.

On May 30, 2001, three months after plaintiff had been retained by defendants, Allegro commenced an action against defendants in the United States District Court for the District of Oregon. On July 12, 2001, plaintiff filed an answer and counterclaim on behalf of defendants in the Allegro action. The parties held hearings before the federal court sitting in Portland, Oregon, with plaintiff, who was granted admission, pro hac vice, communicating from New York by telephone. Depositions were also conducted by telephone, plaintiff participating from New York and defendant Doucet from Los Angeles. Neither Doucet nor any person on her behalf or on behalf of ONAM ever traveled to New York in connection with the Oregon federal case or any other matter during the period of time plaintiff represented defendants. Indeed, plaintiff admits that he never met with defendants in person, even when he happened to be in California. As he concedes, all of the communications between him and the clients were by e-mail, telephone or fax.

In January of 2002, less than one year after his retention, plaintiff and defendants had a fee dispute, prompting plaintiff, by e-mail, to resign as the attorney for defendants in the Oregon action. Plaintiff's e-mail advised ONAM as follows: "Since you are hiring another lawyer to replace me, I will get my expenses back at the end of the case together with a fair legal fee for the work I have done so far." On March 14, 2002, a substitution of counsel on behalf of defendants was filed in the federal action. The United States Magistrate hearing the case granted defendants' motion to compel plaintiff to turn over his file to defendants' new counsel and denied plaintiff's motion for payment of $57,906.05 in legal fees. In denying plaintiff's motion, the Magistrate held: "Because [plaintiff] made an offer in writing, which Ms. Bell-Doucet accepted, to be paid his expenses and a fair legal fee at the conclusion of the case, he should be held to that agreement. The agreement was made before [plaintiff] asserted a lien and before he demanded the sum of $57,906. [Plaintiff's] attempts to assert a lien and demand a liquidated amount were in breach of the agreement he and Ms. Bell-Doucet made." Eventually the Oregon action was dismissed after the parties informed the court that the matter had been settled.

In January 2005, plaintiff commenced the instant action alleging breach of contract and unjust enrichment and seeking damages of at least $59,906.38. Defendants moved, pre-answer, to dismiss the complaint pursuant to CPLR 3211 (a) (8) on the ground of lack of personal jurisdiction, arguing that they had no contact with the State of New York so as to justify this State's long-arm jurisdiction. Emphasizing that all of the legal work done in the Oregon case was performed in New York, plaintiff, pro se, argued that defendants' repeated communications with him by telephone, regular mail, e-mail and fax in connection with the Oregon case while he was in New York and they were in California was sufficient to confer long-arm jurisdiction over them.

Supreme Court denied the motion. Noting that defendants contacted plaintiff in New York and solicited his representation of them in the Oregon action, that they consulted him in connection with that action by telephone, e-mail and fax at all times in New York, and that this case is an action to recover legal fees for the very matter for which plaintiff was retained, the court reasoned as follows: "[P]laintiff has sufficiently established that defendants are subject to the long-arm jurisdiction of New York. Defendants['] activities in retaining plaintiff, . . . a New York attorney situated in New York, to represent

them in the Oregon Action was purposeful and a sufficient nexus exists between that retention of plaintiff and the instant claim regarding allegedly unpaid legal fees."

Even though defendants' initial telephone call to plaintiff was for the purpose of retaining him, out of which retention this lawsuit arises, the motion court erred in holding that the contacts by telephone, e-mail and fax, are a sufficient basis upon which to confer long-arm jurisdiction pursuant to CPLR 302. Accordingly, I dissent.

A New York court may exercise personal jurisdiction over a nondomicilliary who transacts business within the state (CPLR 302 [a] [1]). To invoke jurisdiction, it must be shown that the defendant's activities were purposeful and that "there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil* Corp., 71 NY2d 460, 467 [1988]; *accord Olympus Am., Inc. v Fujinon, Inc.*, 8 AD3d 76, 77 [2004]). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state" (*Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez*, 171 F3d 779, 787 [2d Cir 1999]). To meet the "purposeful activity" test, the nondomicilliary must have engaged in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State' " (*McKee Elec. Co. v Rauland-Borg Corp.*, 20 NY2d 377, 382 [1967], quoting *Hanson v Denckla*, 357 US 235, 253 [1958]).

Initially, it is noted that while the majority stresses that all of the legal work done by plaintiff in connection with the Oregon action was performed in New York, plaintiff's own activities in New York cannot be relied on to establish jurisdiction over a nonresident (*Haar v Armendaris Corp.*, 31 NY2d 1040 [1973], *revg on dissenting op at* 40 AD2d 769, 769-770 [1972]). It is the defendant nonresident's "purposeful activity [here] . . . in connection with the matter in suit" that is determinative of jurisdiction under CPLR 302 (a) (1) (*Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443, 457 [1965], *cert denied sub nom Estwing Mfg. Co., Inc. v Singer*, 382 US 905 [1965]; *see Ferrante Equip. Co. v Lasker-Goldman Corp.*, 26 NY2d 280 [1970]; *cf. Parke-Bernet Galleries v Franklyn*, 26 NY2d 13, 17 [1970]). It should also be noted that there is no basis for the majority's characterization of defendants' actions as "requesting plaintiff to do substantial work for them in New York." While the contemplated work may fairly be said to have been substantial, there is nothing to suggest that defendants had the slightest regard for where it was to be performed.

It is well established that negotiation and execution of contracts by mail and telephone with persons residing in New York is not generally a sufficient basis for personal jurisdiction over nondomicilliaries (*Agrashell, Inc. v Bernard Sirotta Co.*, 344 F2d 583, 587 [2d Cir 1965]; *see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 21 AD3d 90, 94 [2005], *affd* 7 NY3d 65 [2006]; *see also Warck-Meister v Diana Lowenstein Fine Arts*, 7 AD3d 351, 352 [2004] ["(t)he various telephone, fax and e-mail communications upon which plaintiff relies, . . . are not, under the circumstances herein, adequate transactional predicates for an assertion of jurisdiction under CPLR 302 (a) (1)"]; *see also* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C302:7).

While courts have upheld the exercise of jurisdiction under the transaction of business prong of CPLR 302 where the defendant has never set foot in New York (*see e.g. Parke-Bernet Galleries, supra; Liberatore v Calvino*, 293 AD2d 217 [2002]), in such cases the defendant "actively" projected itself into New York (*Worldwide Futgol Assoc., Inc. v Event Entertainment, Inc.*, 983 F Supp 173, 177 [1997]; *Parke-Bernet, supra* at 18 [defendant participated in an auction held in New York by transmitting bids over the telephone "projected himself into the auction room in order to compete with the other prospective purchasers who were there"]; *Liberatore v Calvino*, 293 AD2d at 220 ["(t)elephone calls and written communications, which generally are held not to provide a sufficient basis for personal jurisdiction under the long-arm statute, must be shown to have been used by the defendant to actively participate in business transactions in New York" (citation and internal quotation marks omitted)]).

In *Liberatore v Calvino*, a Rhode Island resident sued a Rhode Island attorney to represent her in a personal injury action arising out of an automobile accident in New York. When the lawyer's attempts to negotiate a settlement proved unsuccessful, he referred plaintiff to a New York attorney, whom he assured he would assist in settling plaintiff's claims. After the statute of limitations ran on the plaintiff's claim, she sued both the New York lawyer and the defendant Rhode Island lawyer in New York. This Court permitted the case to proceed against the Rhode Island defendant because "he projected himself into the state to perform services by contracting with plaintiff to legally represent her here for purposes of obtaining a favorable settlement of her New York personal injury claim from New York tortfeasors in accordance with New York law" (*id.* at 221), thereby transacting business in the state. This is, of course, a

far cry from the telephone calls, e-mail and faxes to New York relied upon here.

Similarly, in *Libra Global Tech. Servs. (UK) v Telemedia Intl.* (279 AD2d 326, 327 [2001]), we held, "[p]laintiffs also failed to establish jurisdiction pursuant to CPLR 302 (a) (1), New York's long-arm statute, since Telemedia International did not 'project' itself into New York for jurisdictional purposes via the 45-minute video-conference, during which the parties negotiated a portion of their contract for the provision of worldwide telecommunications services." (*See also Granat v Bochner,* 268 AD2d 365 [2000] ["(c)ontrary to plaintiff's argument, sending faxes and making phone calls to this State are not, without more, activities tantamount to 'transacting business' within the meaning of the aforecited long-arm statute"].) Nor did defendant "us[e] electronic and telephonic means to project themselves into New York to conduct business transactions" (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.,* 7 NY3d 65, 71 [2006]).

*Kaczorowski v Black & Adams* (293 AD2d 358 [2002]), cited by the majority, the only case in which this Court has upheld the exercise of jurisdiction against a nondomicilliary based solely on telephonic and written communications with the plaintiff in New York, is, as its underlying facts reflect, in conflict with this Court's precedents. In that case, plaintiff New York attorney performed legal services in New York for defendant, a Philadelphia law firm, in connection with a class action pending in Pennsylvania. Despite the fact that defendant was at no time present in New York, the Court upheld the exercise of long-arm jurisdiction over defendant based solely on its solicitation and retention of plaintiff in New York, by telephone and written correspondence, and consultation by telephone between plaintiff and defendant while plaintiff was in New York.

The cases cited by the majority do not alter the conclusion reached in the array of cases cited in support of defendants' position. In *Colucci & Umans v 1 Mark* (224 AD2d 243 [1996]), for example, this Court found a basis for the exercise of long-arm jurisdiction as a result of the corporate defendant's retention of the plaintiff New York law firm "to represent it in a New York [federal court] proceeding, its participation in that proceeding by way of numerous telephone calls and visits to New York by its registered agent and its retention of other attorneys in New York to continue the representation" (*id.*). These facts, clearly indicative of purposeful activity in New York, are in sharp contrast to the facts in the instant matter, involving neither litigation nor meetings of any kind in New York.

This Court's decision in *Otterbourg, Steindler, Houston &*

*Rosen v Shreve City Apts.* (147 AD2d 327 [1989]) is similarly inapt because the defendant there engaged in "purposeful activity" in New York by its "active and sustained immersion" in a bankruptcy proceeding pending in New York and in other litigation and legal activity in New York (*id.* at 333), as opposed to the telephonic retention and handful of telephone calls, e-mails and faxes relied upon by plaintiff in this matter. As this Court noted in *Otterbourg*: "We need not, however, reach the issue of whether the retention of New York counsel to provide services in connection with legal proceedings in this State, without more, is sufficient to confer jurisdiction on the courts of this State in any action brought by the attorneys to recover their fees for such services since, as this record demonstrates, defendants did more than merely retain plaintiff. They communicated with plaintiff by means of at least 93 telephone calls, many of which were originated by them, as well as by letters sent by them into the State. In addition to these letters and telephone calls, they participated in settlement negotiations relating to the pending legal proceedings by telephone conference calls with representatives of Nest Associates and an open telephone line into a meeting in New York. They settled various aspects of the bankruptcy proceedings pending in New York, entering into an agreement which provided not only that it was to be governed by the laws of the State of New York but also that defendants were to make payments to Nest Associates in New York. They also retained other attorneys in New York to terminate their contractual relationship with plaintiff, and procure plaintiff's execution of a stipulation of substitution. At defendants' behest, this other New York law firm thereafter continued to provide legal services for them in New York. These various activities, coupled with defendants' initial retention of plaintiff to represent them in the New York bankruptcy proceeding, demonstrate their engagement in purposeful activity in this State in connection with matters involved in this lawsuit." (*Id.* at 332.)

Plaintiff's reliance on *Murray, Hollander, Sullivan & Bass v HEM Research* (111 AD2d 63 [1985]) is puzzling since there the defendants admitted that many key aspects of the representation took place in New York. The retention of the plaintiff law firm had taken place at a meeting in New York; there had been meetings with the defendant's president in New York to negotiate payment of a portion of the plaintiff's services as well as seven other specified meetings in New York City with the defendant's president concerning the plaintiff's representation of the defendant's business interests.

Nor does the decision in *Elman v Belson* (32 AD2d 422 [1969])

offer support for plaintiff's position. There, Illinois attorneys representing the defendant made several trips to New York, initially to retain plaintiffs, New York attorneys, to domesticate two judgments they had secured for their client in Illinois and later to participate in the New York proceeding, which resulted in a New York judgment. The Second Department held that the Illinois client had "transacted business" in New York, even if, as the client claimed, the plaintiffs were retained without the client's knowledge and consent, or even against his express direction, finding, "it is hardly disputable that all of these activities were conducted for his benefit, even though he now chooses not to recognize them" (*id.* at 425). Obviously much more was involved in that case than the mere retention of and representation by New York attorneys.

Since defendants did not actively project themselves into New York so as to subject themselves to long-arm jurisdiction the motion to dismiss the complaint should have been granted.