James E. **WILLIAMS** II, Plaintiff,

v.

Cynthia R. **NATHAN**, Defendant.

No. 93–CV–4055 (JG).

United States District Court,
E.D. New York.

Sept. 13, 1995.

James E. Williams II, Brooklyn, NY, plaintiff pro se.

Cynthia R. Nathan, Front Royal, VA, defendant pro se.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

Plaintiff James E. Williams, acting *pro se*, brought this diversity action against defendant Cynthia R. Nathan, claiming damages for defamation of character. Defendant Nathan, also appearing *pro se*, has moved to dismiss the claims, or, in the alternative, to transfer venue to the United States District Court for the Eastern District of Virginia. For the reasons discussed below, the action is dismissed.

### BACKGROUND

The litigious relationship between the parties has an elaborate history consisting, for the most part, of actions the plaintiff has filed against the defendant and others. Prior to bringing the instant action, plaintiff sued defendant twice in the Eastern District of Virginia, asserting fraud, breach of contract and professional malpractice, among other claims. Both actions were dismissed. The second complaint, which listed no less than 130 causes of action, was dismissed in part on March 19, 1993 by the Honorable James C. Cacheris ("Chief Judge Cacheris' order"),[1] and later dismissed in its entirety when plaintiff failed to comply with discovery. (Judge Sifton's order at 3.) The dismissal was affirmed by the Court of Appeals for the Fourth Circuit. In addition, on February 5, 1992, plaintiff filed a bankruptcy petition in the same district, which he later withdrew. On April 1, 1992, he filed for bankruptcy in this district. That proceeding was subsequently dismissed.

Finally, plaintiff filed this action on September 3, 1993. He claims that defendant defamed him in a letter she sent in September 1992 to two of his creditors, Alex and Nathan Steinberg, who were litigating an unrelated action against plaintiff.[2] Defendant, who is 81 years old and ailing, has been unable to appear in person regarding this action, and consequently all proceedings thus far have been conducted by telephone conference and written submission.

On September 26, 1994, the Honorable Charles P. Sifton, who was then presiding over the case, issued an order ("Judge Sifton's order") which addressed the instant motion to dismiss. In that order, Judge Sifton construed the defendant's *pro se* motion to be based upon the absence of personal jurisdiction, and concluded that jurisdiction was indeed lacking under § 302(a)(1) of the New York Civil Practice Law and Rules ("CPLR"). Nevertheless, in light of plaintiff's *pro se* status, Judge Sifton allowed him a second opportunity to present facts sufficient to ground jurisdiction or, in the alternative, to show why transfer to another federal district was appropriate under 28 U.S.C. § 1406. The parties submitted supplemental affidavits in October and November 1994, and the case was subsequently transferred to this Court. Additional affidavits were submitted after the transfer.

The 1994 affidavits describe the parties' communications regarding certain real estate transactions. In July 1991, defendant, a resident of Virginia, sold plaintiff, a resident of New York, a house located at 1800 South Lynn Street, Arlington, Virginia, for $360,000. (Judge Sifton's order at 2; Plaintiff's Supplemental Aff. ("Pl.'s Aff.") at 2.) Defendant took a first deed of trust on the property in the amount of $355,000, and a blanket trust of $87,000 on another property owned by plaintiff in Arlington, at 1029 South 19th Street. (Judge Sifton's order at 2.)

The record indicates that plaintiff ceased making payments on the property, claiming that the house had serious structural problems. (*Id.*; Chief Judge Cacheris' order at 2–3.) He attempted unsuccessfully to negotiate with defendant in order to avoid foreclosure. (*Id.*) In November 1991, defendant

---

1. This order is reported at *Williams v. Nathan, et al.,* No. 93–90–A, 1993 WL 219516 (E.D.Va. March 19, 1993).

2. Review of this letter, which is attached to the Complaint, indicates that it was written in response to a request by one of the Steinbergs for information about the plaintiff. In it defendant called plaintiff "a thorough rascal who twists facts and misrepresents apparently without conscience," stated that he had avoided paying real estate taxes for years by claiming that he was disabled and of low income, and opined that his claimed disability was "a pretended mental condition."

warned plaintiff that she would commence foreclosure proceedings unless plaintiff made the required payments. (*Id.*) Plaintiff was notified on January 21, 1992, that Loretta Connor of Arlington Realty, Inc., had been substituted as trustee on the $355,000 and $87,000 notes originally held by defendant Nathan, and that the South Lynn and South 19th Street properties would be sold at an auction to be held February 5, 1992. (Chief Judge Cacheris' order at 3.)

A series of legal proceedings followed. On February 3, 1992, plaintiff applied for a temporary restraining order to suspend the foreclosure proceedings. (*Id.*) The application was denied. Subsequently, he filed the four actions described above, *see supra* pp. 1–2.

Defendant Nathan bought both the South Lynn Street and South 19th Street properties at the auction. She then brought suit in a Virginia state court to remove plaintiff from the South 19th Street house. (Judge Sifton's order at 3.) In connection with this suit, defendant obtained an order prohibiting plaintiff from entering the premises. (*Id.*) The police informed plaintiff that he would be arrested if he attempted to return there. (Chief Judge Cacheris' order at 4.)

## A. *The Supplemental Affidavits*

As noted above, Judge Sifton's order permitted plaintiff another opportunity to present facts that justified personal jurisdiction over defendant Nathan in this district. In his supplemental affidavit submitted in late 1994, plaintiff characterized his communications with defendant in connection with his purchase of the South Lynn Street property as a series of telephone calls he *received from* defendant or her agents:

> "Beginning in April of 1991, I received telephone calls from Virginia followed by a contract in the mail prepared by Arlington Realty, Inc., through its sales agent, Loretta D. Connor, in relation to 1800 South Lynn Street, Arlington, Virginia. In June 1991, I began receiving telephone calls from the defendant in relation to the property."

(Pl.'s Aff. at 2.)

However, defendant's supplemental affidavit states that any telephone calls she or Arlington Realty made to plaintiff were in response to his previously-expressed wish to buy the South Lynn Street property. (Defendant's Supplemental Affidavit ("Def.'s Aff.") at 1.) Plaintiff does not contest this assertion. Indeed, in a subsequent affidavit filed August 1, 1995, he concedes it by stating that in March 1991, he inquired about the property after walking past it and noticing a "For Sale" sign near the driveway entrance. (Plaintiff's Affidavit dated July 30, 1995, ¶ 6.) The record indicates that two real estate brokers for Arlington Realty, Inc. responded by showing plaintiff the property. (Chief Judge Cacheris' order at 2.) Thus, it is undisputed that the communications concerning the sale of the South Lynn Street property began with plaintiff's expression of interest—made in Virginia to a Virginia real estate agency—in purchasing the property.

Plaintiff goes on to assert in his affidavit that "shortly after" November 1991, he "began receiving calls" from Loretta Connor of Arlington Realty regarding the possible sale of plaintiff's South 19th Street property. (Pl.'s Aff. at 2.) However, defendant already held a deed of trust for that property, and these alleged calls were made at about the time defendant was considering foreclosing on both the South Lynn Street property and the South 19th Street property.

Other allegations contained in plaintiff's affidavit concern the contentious relationship that subsequently developed between the parties. Plaintiff alleges that in February 1992, he "received certified letters from the defendant's Virginia attorney, Vernon L. Evans." (Pl.'s Aff. at 3.) Plaintiff does not describe the content of these alleged letters or explain their purpose, but their timing plainly indicates that they were sent in connection with the foreclosure proceedings. Plaintiff alleges further that after he filed the second bankruptcy petition in New York, defendant hired a New York attorney who moved successfully to have the automatic stay lifted with respect to the South Lynn and South 19th Street properties. (*Id.*) Finally, plaintiff alleges that he received a telephone call in April 1992 from a Detective Tyler of the Arlington County Police Depart-

ment, who informed plaintiff that he would be arrested if he returned to Arlington. (*Id.*)

## DISCUSSION

### Personal Jurisdiction

■ As Judge Sifton explained in his order of September 26, 1994, personal jurisdiction over a defendant to a defamation action may be maintained under § 302(a)(1) of the CPLR where the defendant engaged in "purposeful activities" in New York, and where a "substantial relationship" existed between those activities and the transaction which gave rise to the cause of action. *Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 829, 527 N.Y.S.2d 729, 522 N.E.2d 1027 (1988). The New York Court of Appeals has defined "purposeful activity" as " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).[3]

A review of the case law reveals that a defendant's attempts to avail herself of the benefits of a forum must be considerably more substantial than defendant Nathan's alleged contacts with the State of New York in order to merit a finding of purposeful activity sufficient to ground jurisdiction. The Second Circuit has observed that "New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir.1983); *see also Fiedler v. First City National Bank of Houston*, 807 F.2d

315, 318 (2d Cir.1986). On the few occasions when New York courts have exercised jurisdiction under such circumstances,[4] they have done so because the defendant "had established a pattern of commercial dealings" with the plaintiff in New York and used the telephone "as a means of projecting [himself] into local commerce." *Fiedler*, 807 F.2d at 317.

In other cases that address out-of-state defendants who maintain communications in New York, however, the defendants' activities in New York were held not substantial enough to serve as a basis for the exercise of jurisdiction under § 302(a)(1). In *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1064–66 (2d Cir. 1974), the Court refused to exercise jurisdiction over a contract dispute even though the contract had been executed in New York, the defendant had hired an agent in New York to perform its obligations under the contract, and the contract provided that it would be governed by New York law. *See also Paine-Webber, Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 119–21 (S.D.N.Y.1990) (no jurisdiction despite defendant's frequent communications to New York by telephone and facsimile, its agreement to a minor modification of the agreement that gave rise to the lawsuit, and its use of a New York investment firm to assist it with a business venture); *McKee Electric Co.*, 20 N.Y.2d at 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (jurisdiction absent even where agreement had been negotiated in New York and a senior employee of defendant had travelled to New York to investigate the plaintiff's complaints in connection with the contract).

■ Defendant Nathan's contacts in New York fall well below the threshold that these cases indicate is necessary to confer jurisdic-

---

**3.** Because I find that plaintiff has not established that defendant engaged in purposeful activities in the State of New York, I do not reach the question whether there is a nexus between those activities and the transaction underlying this claim.

**4.** Two such cases are: *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (defendant who was not physically present at an auction held in New York nevertheless actively participated in it by

transmitting bids over an open telephone line and having an agent physically present at the auction); *CT Chemical (USA), Inc. v. Horizons International, Inc.*, 106 F.R.D. 518 (S.D.N.Y. 1985) (principal of defendant telephoned plaintiff's New York offices, indicated an interest in purchasing plaintiff's products, agreed to make two substantial purchases after a series of telephone conversations, and met with the president of the plaintiff in New York to discuss taking possession of the products).

tion. The papers submitted to the Court show conclusively that plaintiff initiated contacts with defendant, in Virginia, concerning the purchase of the South Lynn Street property, and that all later communications were made for the purpose of negotiating that agreement or enforcing defendant's rights thereunder.[5] Further, plaintiff has not alleged that defendant or her agents did anything other than communicate with him by telephone concerning the purchase and subsequent foreclosures. As stated above, such activity has been repeatedly held insufficient to ground jurisdiction under § 302(a)(1).

In addition, the subsequent activities of plaintiff's lawyers and of Detective Tyler, as alleged in plaintiff's affidavit, do not require a different conclusion. The fact that letters were sent into the forum does not alone establish purposeful activity. Plaintiff has failed to describe the contents of the letters he allegedly received from Vernon Evans, but it is clear that they were in furtherance of defendant's attempt to recover money plaintiff owed her under their prior agreement. Similarly, defendant's act of hiring a New York lawyer to free the South Lynn and South 19th Street properties from operation of the automatic stay does not constitute

such purposeful availment; defendant was simply doing the minimum that was necessary to exercise her rights in property that lay outside of New York.[6] Finally, the Virginia police called plaintiff only to warn him that he would be arrested if he attempted to enter the South 19th Street property. This can hardly be held to constitute purposeful availment by anyone, let alone defendant, of the benefits of the New York forum.

The most significant aspect of defendant's negligible contact with New York in the course of her relations with plaintiff is the fact that all her activities here were focused on and related to undertakings in Virginia. Courts have consistently held in such circumstances that the exercise of personal jurisdiction is improper. In *China Resource Products*, 1994 WL 440719 at *7, the defendant's numerous telephone calls, facsimile transmissions, and mailings to New York in connection with the negotiation of a contract for the sale of goods was held not to ground jurisdiction, because these communications "did not project [the defendant] into any ongoing events that were taking place in New York." Rather, the negotiations focused on goods that were to be shipped from Beijing to Nebraska. *Id.*[7]

5. This fact alone weighs against a finding that this Court may exercise jurisdiction over defendant. *See China Resource Products (USA), Ltd. v. China Distributors, Inc.*, No. 92 CIV. 7119 (SWK), 1994 WL 440719, *9 n. 6 (S.D.N.Y. Aug. 16, 1994); *cf. Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 708 F.Supp. 86, 88–89 (S.D.N.Y.1989) (defendant's initiation of transaction with the New York-based plaintiff was a factor leading the court to find that defendant purposefully availed itself of the New York forum).

6. The holding in *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.*, 147 A.D.2d 327, 332–33, 543 N.Y.S.2d 978 (1st Dep't 1989), is not to the contrary. In that case, the defendants had sold an apartment complex they owned in Louisiana to a New York partnership which subsequently filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. The defendants hired the plaintiff law firm to represent their interests in the bankruptcy proceeding. Later the plaintiff sued the defendants in New York to recover fees owed to them for their services. In ruling that the defendants could be subjected to personal jurisdiction in New York, the court pointed out that defendants had done "more

than merely retain plaintiff": they had communicated with plaintiff in numerous telephone calls and letters, participated in settlement negotiations concerning the bankruptcy by means of telephone conferences and an open telephone line to a meeting in New York, and settled aspects of the bankruptcy with agreements that were to be governed by New York law and that provided for defendants to make payments in New York to the partnership to whom they had sold the Louisiana property. *Id.*

By contrast, defendant Nathan did not hire her New York attorney so that she could become involved in plaintiff's bankruptcy proceeding. Rather, she wished to extricate herself and her financial interests from it so that she could ensure payment of plaintiff's obligations to her. Stated another way, plaintiff became involved in the New York bankruptcy only as much as she needed to in order to exercise her rights and interests in Virginia.

Finally, defendant is not being sued here by her New York counsel, as was the case in *Otterbourg*, and I need not address whether such an action could properly be brought in this district.

7. *See also Wilhelmshaven Acquisition Corp. v. Asher*, 810 F.Supp. 108, 112 (S.D.N.Y.1993) (al-

For all these reasons, I conclude that plaintiff has not made the requisite showing that defendant has engaged in purposeful activity within New York State, and accordingly, defendant is not required to submit to this Court's jurisdiction.

*Motion to Transfer*

■ The determination that personal jurisdiction is lacking does not dispose of the case, however. There remains the question whether it should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). That section reads:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Transfer is not guaranteed under § 1404. The Second Circuit has held that where there exists a procedural bar to suit in the transferor district, but not in the transferee district, the district judge nevertheless "should consider whether a transfer would be in the interest of justice." *Spar, Inc. v. Information Resources*, 956 F.2d 392, 394 (2d Cir.1992). A court may decline to order a transfer if it determines that the case was filed in bad faith or as a form of harassment. *See, e.g., In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d 802, 806 (9th Cir.1991); *cf. Kellogg Co. v. First National Bank of Louisville*, 512 F.Supp. 56, 60 (W.D.Mich.1981) (transfer was appropriate where plaintiff's erroneous filing in an improper venue was done in good faith and was not intended to harass); *De La Fuente v. Interstate Commerce Commission*, 451 F.Supp. 867, 872 (N.D.Ill.1978) ("Where, as here, there is no indication that suit was commenced in an improper venue for purposes of harassment, transfer is preferable to dismissal.").

In accordance with Judge Sifton's order of September 26, 1994, plaintiff set forth facts in his affidavit that would allow a conclusion that this case could have been brought originally in the Eastern District of Virginia. Although this is correct,[8] I am nevertheless convinced that transfer to that district would frustrate the interest of justice, for several reasons. First, plaintiff's behavior has caused me to doubt the veracity of his representations to the Court. During a telephone status conference in February 1995 regarding this motion, plaintiff resisted providing his New York address, even after the Court had requested it. Next, in his supplemental affidavit, submitted in accordance with Judge Sifton's order, plaintiff created the false impression that his purchase of the South Lynn Street property came about as a result of solicitations in this district by defendant and her agents. (Pl.'s Aff. at 2.) However, he later admitted that *he* had initiated the contact with Arlington Realty, in Virginia, after personally viewing the property in March 1991. (Pl.'s Aff. dated July 30, 1995, ¶ 6.)

Second, plaintiff's history in the Virginia federal court and the United States Bankruptcy Court in this district provides a further reason to conclude that the interest of justice would not be served by transferring this case to Virginia. Three out of four legal proceedings he has filed (all of which affect defendant, either by naming her as a party or by attempting to deprive her of her rights in particular property) have been dismissed, and one has been voluntarily withdrawn. This dubious history suggests that plaintiff is intentionally using the courts to harass the 81-year-old defendant.

A closer look at Chief Judge Cacheris' memorandum opinion in plaintiff's blunderbuss action in the Eastern District of Virginia confirms that suspicion. Among the nu-

---

though contract negotiations were taking place in New York, the "center of gravity of the transaction was an oil refinery in Germany"); *Vardinoyannis v. Encyclopedia Britannica, Inc.*, No. 89 CIV. 2475 (PNL), 1990 WL 124338, *4 (S.D.N.Y. Aug. 20, 1990) (defendant's business-related telephone calls and letters to New York were not designed to avail him of the forum's protections as they "were connected with transactions taking place almost completely in Greece."); *Paine-Webber Inc. v. Westgate Group, Inc.*, 748 F.Supp.

115, 119 (S.D.N.Y.1990) (communications made to New York "were not designed to permit defendants to conduct activity in New York.").

8. Plaintiff points out that the action could have been brought in the Eastern District of Virginia, Alexandria Division, because both the South Lynn and South 19th Street properties are located there. Defendant also resides within that district.

merous allegations in that case (which asserted allegations of usury that the Court termed "patently frivolous," as well as a variety of federal and state claims against defendant Nathan), plaintiff alleged that defendant (and Loretta Connor) defamed him personally in the foreclosure notices they caused to be published. That defamation claim was dismissed. *Williams v. Nathan*, 1993 WL 219516 at *6.

Because there is no reason the particular alleged defamation at issue in this case could not also have been included in that prior case before Chief Judge Cacheris, the claim here may well be barred by the doctrine of *res judicata*. Whether or not that is so, this Court will not require defendant Nathan to be hauled back into federal court in Virginia to answer it.

In sum, I conclude that plaintiff's decision to bring the instant action in this district was motivated by a desire to harass and by his realization that he could no longer achieve that result in the Virginia courts. I therefore decline to transfer the case to another federal district. I should add that, wholly apart from this harassment, it would be particularly inappropriate, and contrary to the interests of justice, to allow plaintiff to transfer this single claim back to a court in which more than 100 prior claims arising out of the same facts were previously dismissed, in part because of plaintiff's own refusal to comply with the court's rules regarding discovery. *See In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d at 806.

### ORDER

For the reasons stated herein, this Court shall not exercise jurisdiction over defendant Cynthia R. Nathan, and all of plaintiff's claims against her are accordingly dismissed. In addition, transferring the case to another federal district would not serve the interests of justice, and I therefore decline to order such a transfer. In light of the strong evidence that plaintiff sued defendant in bad faith and for the sole purpose of harassing her, and of his penchant for such litigation against defendant, it is further ordered that plaintiff is prohibited from filing any claims against defendant in this district without the prior review and approval of a magistrate judge.

The Clerk of the Court is advised that this Order closes the case.

So Ordered.