[806 NYS2d 84]

Opticare Acquisition Corp., Doing Business as Wise Optical Vision Group, Inc., Respondent, v Yvette Castillo et al., Defendants, and Joann Lee et al., Appellants.

Second Department, November 7, 2005

**APPEARANCES OF COUNSEL**

*Shapiro Forman Allen & Miller*, New York City (*Rachel Sims* of counsel), for appellants.

*Bleakley Platt & Schmidt, LLP,* White Plains, and *Mintz Levin Cohen Ferris Glovsky & Popeo, P.C.*, New York City (*Jennifer Di-Marco, Jennifer B. Rubin* and *Lara M. Burnazian* of counsel), for respondent.

**OPINION OF THE COURT**

H. MILLER, J.P.

In this case, we are asked to decide whether the plaintiff's complaint alleges sufficient facts to allow the Supreme Court, Westchester County, at this stage of the action, to exercise personal jurisdiction over the appellants—three nonresident, former branch managers of a New York-based corporation, who are alleged to have breached their respective employment agreements with that corporation. The Supreme Court rejected the appellants' argument, made in a preanswer motion to dismiss the complaint, that the court lacked personal jurisdiction over them. Under the circumstances presented, we hold that the plaintiff's allegations were sufficient to defeat the appellants' motion, and accordingly, we affirm the order insofar as appealed from.

I

This action was commenced on November 10, 2003. Each of the 13 defendants is alleged to be a former employee of the plaintiff, Opticare Acquisition Corp., doing business as Wise Optical Vision Group, Inc. (hereinafter Wise), a distributor of "optical products." Each defendant signed an agreement pledging not to disclose Wise's "confidential" and "proprietary" information, and it is alleged that each one breached his or her agreement upon leaving Wise to join a competing company set up by Wise's former owner, Barry Weisfeld.

Wise is a New York corporation whose principal offices are located in Westchester County. On February 7, 2003, Opticare Acquisition Corp. (hereinafter Opticare) acquired certain assets of Wise, including Wise's "goodwill," the right to use Wise's name, and—key to this case—the right to enforce the agreements described above.

The appellant Joann Lee resided in Minnesota, and worked for Wise as a branch manager for its North Central branch from June 1, 2000, to February 14, 2003. With respect to Lee, the plaintiff alleged as follows:

> "As a Branch Manager, defendant Lee was responsible for selling Wise products, which products are shipped exclusively from Wise's distribution center located in its Yonkers, New York facility. Defendant Lee was in constant contact with Wise headquarters in Yonkers, New York with respect to business and personnel matters. All payroll checks were mailed from New York to Lee. All catalogs and pricing information and other confidential information at issue in this lawsuit originated in New York."

The appellant Melvin D. Sar resided in California, and worked as a branch manager for Wise's California branch, from July 1994 to February 14, 2003. Similar allegations were made against Sar as were made against Lee, as quoted above, with the exception that Wise also alleged that Sar "made personal visit(s) to Wise's New York office."

The appellant Gilbert Woo resided in Oregon, and worked for Wise as a branch manager for its North West branch from May 16, 2000, to February 14, 2003. Similar allegations were made against Woo as were made against Lee, as quoted above, with the exception that Wise also alleged that Sar "made personal visit(s) to Wise's New York office."

Prior to the time Opticare acquired Wise's assets, Wise had taken steps to protect what it considered to be "non-public, confidential and proprietary information" (hereinafter confidential information). The complaint defined that information as, inter alia, pricing catalogs, the identities of "decision-makers" who made purchasing decisions for Wise's products on behalf of its customers, information regarding Wise's pricing structures, volume discounts and contract pricing, and the order history and purchase volume of Wise's customers.

As a condition of their employment, each of the appellants signed the agreements at issue here. Those agreements were

designed to protect Wise's confidential information. For example, Lee's agreement provided that during her employment with the company, and for a one-year period thereafter, she would refrain from any conduct that would "diminish the value" of Wise, including the solicitation or hiring of Wise's employees. She further agreed that she would maintain the confidentiality of certain enumerated proprietary information of Wise, and would not disclose it outside of Wise during or after her employment there, except as necessary to perform her job with Wise, or with its written consent. Lee also agreed that, upon termination of her employment with Wise, she would deliver to the company all writings, including computer records and drawings, relating to Wise's business, which she possessed or had under her control.

In addition, Lee agreed as follows:

> "The Employee recognizes and agrees (i) that the identification of the existing customers and suppliers, and customers and suppliers of [Wise] developed during the Term [not a defined word] by the Company, are and shall be the sole and exclusive property of the Company, and that the Employee neither has nor shall have any right, title or interest therein; (ii) that such information is and must continue to be confidential; (iii) that such information is not readily accessible to competitors of the Company; and (iv) that the Company's present and future business relationship with its customers, suppliers and contractors is and will continue to be of a type which normally continues unless interfered with by others."

Lee's employment with Wise was terminable at will.

Sar's employment agreement was substantially the same as Lee's, except it had an additional provision prohibiting him, for a period of one year after his employment ended, from soliciting business from, contacting, or doing business with any of Wise's customers or suppliers. Woo's agreement was in material respects the same as Lee's.

None of the three agreements contained a choice-of-law provision. There is no indication where they were signed.

The plaintiff alleged that in January 2003, about four years after Weisfeld sold the company, he tried to buy it back, but his $9 million offer was rejected. Along with two others (not sued herein), Weisfeld then set up a competing company called Opti-

cal Distribution Group (hereinafter ODG), and hired Wise employees, including the appellants, to assist in the new business. Each of the appellants is alleged to have been a Wise employee until February 14, 2003, so each presumably began working for ODG at or about that time. Although the complaint does not allege ODG's location, the plaintiff represents in its brief that ODG is headquartered in New York, and that representation has not been challenged.

Each appellant is alleged to have breached their Wise employment contracts by misappropriating Wise's confidential information to support ODG. The plaintiff claimed that prior to leaving Wise, each appellant improperly removed Wise files containing, among other things, account contacts, records of prior sales and customer credit, and preference and purchasing information. Since joining ODG, each appellant is alleged to have "disclosed [that information] to ODG in New York," and/or "used it at ODG" to steal Wise's customers.

As noted, the plaintiff alleged that the appellants breached their employment contracts. It did not allege any tort causes of action.

All 13 defendants made a joint motion to dismiss the complaint for failure to state a cause of action. In addition, the appellants moved pursuant to CPLR 3211 (a) (8) to dismiss the complaint insofar as asserted against them for lack of personal jurisdiction.

The Supreme Court denied the defendants' motion in its entirety. As relevant to this appeal, the court found that sufficient facts were alleged to sustain personal jurisdiction over the appellants. Lee, Sar, and Woo now appeal from so much of the Supreme Court's order as denied that branch of the motion which was to dismiss the complaint insofar as asserted against them for lack of personal jurisdiction. We conclude that their contentions are without merit, and accordingly affirm.

## II

### A

The complaint does not allege (and the Supreme Court did not identify) the jurisdictional basis upon which the plaintiff relies in order to support personal jurisdiction over the appellants. Clearly, the appellants were not "present" in this state, so that CPLR 301 is inapplicable. Jurisdiction thus must be found based on one or more of the provisions of CPLR 302. In

its brief on appeal, the plaintiff limits its discussion to CPLR 302 (a) (1), the "transaction of business" subparagraph of the long-arm statute. Since it does not discuss CPLR 302 (a) (2) and (3)—the "tortious act" subparagraphs—and since the complaint contains no tort causes of action, we also limit our discussion to CPLR 302 (a) (1).

On this record, made upon a preanswer motion to dismiss the action under CPLR 3211 (a) (8), the plaintiff need only make a prima facie showing that personal jurisdiction exists. However, it carries the ultimate burden of proof on that issue (*see Sipa Press v Star-Telegram Operating*, 181 Misc 2d 550, 554 [1999] [citing cases]).

In pertinent part, CPLR 302 (a) (1) permits the New York courts to exercise personal jurisdiction over a nondomiciliary who, in person or through an agent, "transacts any business within the state." The cause of action must arise from the transaction of business (*see* CPLR 302 [a] [1]; *McGowan v Smith*, 52 NY2d 268, 272 [1981]).

Thus, the first requirement is that there be a transaction of business *within* New York (*see Ferrante Equip. Co. v Lasker-Goldman Corp.*, 26 NY2d 280, 284 [1970]). What constitutes a "transaction of business" has not been precisely defined, but it is clear that under the right circumstances, a "single act" may constitute a transaction within the ambit of the long-arm statute. "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]; *see George Reiner & Co. v Schwartz*, 41 NY2d 648, 651-652 [1977]; *Parke-Bernet Galleries v Franklyn*, 26 NY2d 13, 16-17 [1970]; *Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443, 456 [1965], *cert denied sub nom. Estwing Mfg. Co., Inc. v Singer*, 382 US 905 [1965]; *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 21 AD3d 90 [2005]).

In *George Reiner & Co. v Schwartz (supra)*, the Court of Appeals sustained personal jurisdiction over Schwartz, a Massachusetts resident. Schwartz was a salesman who came to New York in response to the plaintiff's advertisement and, while in New York, interviewed for a job. He was hired, and obtained a written employment agreement in New York on the day of his interview. The agreement assigned him a sales territory in New

England, set his commission rate, and contained other "incidentals" of his employment. The agreement lasted four years, during which time Schwartz covered his sales territory (not including New York), using his Massachusetts home as his base (*see id.* at 649). After the relationship ended, the plaintiff sued Schwartz for breach of his employment agreement, and sought damages from him in the amount of an alleged excess of drawings over commissions.

In upholding the exercise of personal jurisdiction over Schwartz, the Court of Appeals found that he had "transacted business" in New York, within the meaning of CPLR 302 (a) (1), because he was physically present in this state when he executed his employment contract—an agreement that "established a continuing relationship between the parties" (*George Reiner & Co. v Schwartz, supra* at 653).

Although the record in this case is silent as to where the appellants negotiated and executed their employment agreements, we conclude that even assuming they were not made in New York, the appellants transacted business here by entering into agreements which, in each case, gave rise to substantial relationships, both substantively and temporally, with a New York employer. The Court of Appeals characterized Schwartz's situation as the "clearest sort of case" in which the New York courts would have personal jurisdiction, in part because of Schwartz's physical presence here at the time he negotiated and executed his employment agreement (*id.*). However, we do not understand that case to mean that lack of the appellants' physical presence in this state when they signed their employment agreements calls for a different result here, on the facts presented.

The same conclusion may be reached by viewing the jurisdictional issue from a slightly different perspective. In *Parke-Bernet Galleries v Franklyn* (*supra*), the Court of Appeals decided that a California resident "transacted business" under CPLR 302 (a) (1) when he participated (while in California) via an open telephone line in an art auction conducted in New York City. He bought two paintings. When he failed to pay for them, Parke-Bernet sued in New York. The Court of Appeals upheld the exercise of jurisdiction, noting that it was the purpose of New York's long-arm statute to "extend" the jurisdiction of New York's courts to nonresidents who have "engaged in some purposeful activity [here] . . . in connection with the matter in suit" (*id.* at 16 [internal quotation marks omitted]). The Court of Appeals sustained jurisdiction by finding that the defendant

personally participated in the auction room, conducting his business via an open telephone line and thereby affecting the bidding. In doing so, he "purposefully availed himself of the privilege of conducting activities within New York," thus invoking "the benefits and protections of its laws" (*id.* at 18 [internal quotation marks omitted], quoting *Hanson v Denckla,* 357 US 235, 253 [1958]; *see Longines-Wittnauer Watch Co. v Barnes & Reinecke, supra* 458).

While it is true that in *Parke-Bernet,* Dr. Franklyn was engaged·in a personal, as opposed to employment-related transaction, its rationale applies, a fortiori, to the facts presented here. Dr. Franklyn participated in *one* transaction by telephone, but in doing so, he materially affected events *in New York.* He affected the bids of New York participants in the auction, ultimately winning two works of art for himself, thus placing them beyond the reach of other interested parties in New York. Further, he contractually obligated himself to a New York concern: He owed money to the New York auction house, and his failure to pay it caused economic injury to that party, in New York.

If jurisdiction under CPLR 302 (a) (1) may be based on the type of single transaction involved in *Parke-Bernet,* then we see no reason why the same result should not obtain here. In this case, according to the complaint's allegations, as Wise's out-of-state branch managers, the appellants had systematic, ongoing relationships with a New York company, with which they were in daily contact. They may have sold Wise's products in territories outside of New York, but when they did so, they affected local commerce here. Among other things, they changed Wise's economic position, bringing the company into contractual relations with customers, obligating it to ship products from New York, and creating accounts·payable and receivable.

Even assuming none of the appellants ever entered New York to conduct business on Wise's behalf, it defies logic and common sense to conclude that they did not transact business here, especially when the twenty-first century technology undoubtedly available to them to go about their work, such as access via computer to data Wise maintained in New York, conferred upon them the benefit of employment with a New York company, while allowing them the option of living and physically working elsewhere.

Further support for this result may be found in *Olympus Am., Inc. v Fujinon, Inc.* (8 AD3d 76 [2004]), a case recently

decided by the Appellate Division, First Department. In that case, the plaintiff Olympus America, Inc. (hereinafter Olympus), employed Brian Cisco, a nonresident, for 17 years. In connection with his employment, Cisco acquired allegedly confidential proprietary information. He "may have" attended a few sales meetings in New York. The Appellate Division, First Department, sustained jurisdiction over Cisco under CPLR 302 (a) (1), finding, inter alia, that Cisco had "project[ed] himself into local commerce by generating sales between the New York headquarters and the customers in his territories through the phone calls and e-mails he regularly made or sent to New York. By virtue of these communications, Cisco generated a stream of local commerce, from which he earned his livelihood, originating in New York based on sales that [Olympus's] invoices labeled as New York transactions. Cisco was more than a passive participant, playing a crucial role in creating the substance of these transactions, and thus transacting business in New York" (*Olympus Am. Inc. v Fujinon, Inc., supra* at 77).

## B

As noted above, a transaction of business in New York, standing alone, is not enough to sustain personal jurisdiction under CPLR 302 (a) (1). In addition, the cause of action sued upon must arise out of the transaction (*see* CPLR 302 [a] [1]; *McGowan v Smith, supra* at 272). As the Court of Appeals has instructed, "[e]ssential to the maintenance of a suit against a nondomiciliary" under CPLR 302 (a) (1) is "the existence of some articulable nexus between the business transacted and the cause of action sued upon" (*McGowan v Smith* at 272; *see Johnson v Ward*, 4 NY3d 516, 519 [2005] [under CPLR 302 (a) (1), a "substantial relationship" must be established between a defendant's transactions in New York and a plaintiff's cause of action]).

We have little difficulty concluding that there is such a nexus here. If the appellants' "transaction of business" is viewed as the execution of their respective employment agreements, then the cause of action sued upon in each case—breach of those agreements—clearly arose from the relevant transaction. On the other hand, if the "transaction of business" is viewed as the appellants' postagreement business activities on behalf of Wise, then the causes of action clearly arose therefrom once again. Simply put, the appellants could not conduct any business for Wise, in New York or elsewhere, without the confidential infor-

mation they allegedly misappropriated. The contractual breaches that are alleged here consist, inter alia, in the misappropriation of the very confidential information that allowed the appellants to transact business in the first place.

## C

In summary, the complaint's allegations demonstrate, prima facie, that each of the appellants transacted business in New York within the meaning of CPLR 302 (a) (1).

## III

Although the Supreme Court did not address the issue, we note that there is an additional step to the jurisdictional analysis. The exercise of personal jurisdiction also must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution (*see LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 216-219 [2000]). As the United States Supreme Court has made clear, a state may exercise personal jurisdiction over a nondomiciliary defendant provided that it has certain "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (*International Shoe Co. v Washington*, 326 US 310, 316 [1945] [internal quotation marks omitted]).

## A

The test for "minimum contacts" has been refined over the years to whether a defendant's " 'conduct and connection with the forum State' " are such that it " 'should reasonably anticipate being haled into court there' " (*LaMarca v Pak-Mor Mfg. Co., supra* at 216, quoting *World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 297 [1980]). Put another way, the decisions under the Due Process Clause are designed to ensure that a defendant is not dragged into a jurisdiction to answer in litigation brought there as a result of "random," "fortuitous," or "attenuated" contacts (*Burger King Corp. v Rudzewicz*, 471 US 462, 475 [1985]). Manifestly, that concern is not present where, as here, a defendant has purposefully directed its activities toward the forum, and has created continuing obligations between itself and forum residents (*id.* at 476; *Travelers Health Assn. v Virginia ex rel. State Corporation Comm'n*, 339 US 643 [1950]). In such a case, the defendant has availed itself of the "privilege of conducting business there, and because [its] activities are shielded by 'the benefits and protections' of the forum's

laws it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well" (*Burger King Corp. v Rudzewicz, supra* at 476). In this case, there can be little doubt that the appellants purposefully directed their activities toward New York—the state in which their employer was headquartered. They entered into major contractual relationships with that New York entity. Having allegedly caused that company injury, they should not claim surprise at having to answer in the courts of New York for their conduct.

## B

Once it is determined that a defendant has purposefully established minimum contacts with the forum, those contacts may be considered in connection with other factors to determine whether the exercise of jurisdiction would comport with "fair play and substantial justice" (*Burger King Corp. v Rudzewicz, supra* at 476; *see International Shoe Co. v Washington, supra* at 320; *LaMarca v Pak-Mor Mfg. Co., supra* at 217). As the Court of Appeals noted in *LaMarca v Pak-Mor Mfg. Co.*, "[t]his is in essence another way of asking what is reasonable." (*Id.*) Where the plaintiff has established the requisite minimum contacts, a defendant seeking to defeat jurisdiction as constitutionally impermissible carries the burden of presenting a "compelling case" that the "presence of some other considerations would render jurisdiction unreasonable" (*Burger King Corp. v Rudzewicz, supra* at 477; *see LaMarca v Pak-Mor Mfg. Co., supra* at 217-218). The factors to be considered in making that assessment are: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies (*see Asahi Metal Industry Co. v Superior Court of Cal., Solano Cty.*, 480 US 102, 113-114 [1987]; *Burger King Corp. v Rudzewicz, supra* at 476-477).

At bar, the foregoing factors favor the plaintiff. The burden on the appellants is slight. If they were willing to be employed as branch-office managers in a New York-based company, they could not have been concerned then with the "burden" of coming to New York, as needed, on company business. This suit is company business too, albeit in a postemployment context. Second, New York certainly has an interest in adjudicating a

dispute brought by one of its corporate residents, to recover for alleged injuries caused that resident. As for the third factor, if jurisdiction is not allowed here, the plaintiff will be relegated to a number of lawsuits around the country (should it wish to press its claims), which is hardly convenient. Fourth, for the same reason as with factor three, resolution of this case in one forum would appear to advance the interest of the "interstate judicial system" in obtaining the most efficient resolution of this controversy (*see LaMarca v Pak-Mor Mfg. Co., supra* at 218-219). As for the fifth factor, allowing the suit to proceed here will effectuate the shared interest of the states in furthering the policies of protecting the sanctity of contract, as well as enforcing the promises of employees to honor the confidentiality of proprietary information entrusted to them by their employers as conditions of employment. (The violation of such a promise is only an allegation on this record.)

We note that the appellants have not even claimed, much less demonstrated, that New York's exercise of jurisdiction over them would be unreasonable in the Fourteenth Amendment sense. Nor could they. They were employed by a New York company. Presumably it would not have been a burden upon them to come to New York to attend company meetings. It cannot be said that a burden of constitutional dimensions suddenly emerges once they are called upon to answer in a New York court the allegations of their New York-resident employer, that they violated their employment agreements, thus causing injury to that forum resident.

## IV

In conclusion, the plaintiff's complaint sufficiently alleges that New York may exercise personal jurisdiction over the appellants, consistent with CPLR 302 (a) (1), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Accordingly, the order is affirmed insofar as appealed from.

CRANE, GOLDSTEIN and SKELOS, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.