*876 OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendants Ulmer & Berne L.L.E (the Firm), Jeffrey S. Dunlap, Esq., and Christopher E Fisher, Esq.[1] (collectively referred to hereinafter as the Ulmer defendants or the movants) move for an order: (1) pursuant to CPLR 3211 (a) (8) dismissing the complaint of plaintiffs Louis V. Greco, individually and as trustee for the GAMCREFK Trust (the Trust), and the Trust, on the basis of lack of personal jurisdiction; or (2) pursuant to CELR 3211 (a) (5), dismissing plaintiffs’ complaint based upon the expiration of the statute of limitations.[2]
Facts and Erocedural Background
Plaintiffs commenced this action seeking to recover damages for legal malpractice, breach of contract, undue enrichment and attorneys’ fees that allegedly resulted from the Ulmer defendants’ representation of plaintiffs in the underlying action captioned Brian Sullivan v Alain Kodsi et al., which was commenced in the Circuit Court of Cook County, Illinois (Illinois case No. 00 L 1973) (the Illinois action). That action stemmed from a business relationship allegedly entered into between Sullivan, Kodsi and Antonio Gracias in 1996 for the purpose of finding and purchasing mid-sized companies. Therein, Sullivan alleges that after a suitable company that had manufacturing facilities in Ohio was located as available, Kodsi and Gracias informed him that they intended to purchase it, but intended to exclude him from the transaction. The company was purchased on June 15, 1998 for $22,000,000. Sullivan thereafter commenced the Illinois action seeking to recover damages, including $13,000,000 which he claimed was his share of the value of the company acquired, premised upon claims of breach of a partnership agreement, breach of a joint venture agreement, breach of contract, violation of the wage and payment act, quantum meruit, breach of fiduciary duty and tortious interference with a contract. Sullivan also interposed claims of fraudulent transfer, *877 alleging that Kodsi transferred all of his assets to the Trust in order to shield himself from liability, as well as a claim seeking to pierce the corporate veil of other companies allegedly owned and controlled by Kodsi.
On July 10, 2002, the Ulmer defendants appeared in the Illinois action as counsel for Kodsi, a company controlled by him, M.G. Capital, LLC, and the Neuberger Berman Trust Company of Delaware (Neuberger Delaware), as trustee of the Trust. Dunlap was the partner in the Firm who handled the action; Fisher was an associate who assisted Dunlap. In October 2005, Greco replaced Neuberger Delaware as the trustee and Neuberger Delaware was dismissed from the Illinois action. At Greco’s request, the Firm continued to appear on his behalf until he obtained separate counsel in Chicago on February 27, 2006.
In the instant action, plaintiffs allege that the Firm failed to respond to certain requests to admit in the Illinois action, which resulted in an agreement pursuant to which Kodsi and the Trust conceded certain points that ultimately forced them to settle for an amount that was greater than that which would have been otherwise necessary. Plaintiffs further contend that the Ulmer defendants failed to institute an action for contribution against the parties who ultimately settled with Sullivan; failed to appeal when the Illinois court ruled adversely with regard to the court’s jurisdiction over the Trust; and that the Firm’s continuing representation of the Trust constituted a conflict of interest since it did not consult with either Greco or Kodsi with regard to the course of action to be followed.
The Parties’ Contentions
Defendants
In support of their motion, the Ulmer defendants rely upon an affirmation from counsel and affidavits from Dunlap and Fisher to argue that this court may not properly maintain personal jurisdiction over them. More specifically, they assert that the Firm is headquartered in Cleveland, Ohio, with other offices in Cincinnati and Columbus, Ohio and Chicago, Illinois. The Firm, Dunlap and Fisher do not maintain an office in New York, do not regularly conduct business in this state, do not advertise here and do not own any property here; both Dunlap and Fisher are residents of Ohio and neither attorney is licensed to practice law in New York. Further, the underlying action that forms the basis for the claim of malpractice was defended in Cook County, Illinois; Kodsi solicited the Firm there; no services *878 were performed with regard to the Illinois action in the State of New York; and the Firm never entered into a written retainer agreement with plaintiffs.[3] Dunlap and Fisher each aver that he never met with Greco and did not travel to New York in connection with the Illinois action; their only communications with Greco were by telephone, e-mail and letter.
Plaintiffs
In opposition, plaintiffs argue that this court may exercise jurisdiction over the Ulmer defendants because the Firm had “New York residents and businesses for clients and have visited New York” in connection with the Illinois action. In so arguing, plaintiffs rely upon an affidavit submitted by Greco in which he alleges that he is a resident of Brooklyn and that he has been the trustee of the Trust since the fall of 2005. Prior to that time, Neuberger Delaware entered into a fixed fee agreement with the Firm to represent it in the Illinois action for $133,000; Greco contends that he affirmed that agreement when he became trustee and he sent a check in the amount of $100,000 to Dunlap on September 30, 2005. Greco further avers that Kodsi acted as his agent and met with Dunlap, Fisher and other representatives of the Firm when they visited plaintiffs’ offices in New York and in Brooklyn; Greco, however, was unable to attend any of the formal meetings regarding the Illinois action or the dinners where legal matters were discussed because of conflicts in his schedule. Greco further claims that although the Firm did not maintain an office in New York, their actions in this state caused significant injury to the assets and property owned by the Trust and by him in New York. Finally, Greco alleges that he personally had extensive telephone conferences, electronic mail discussions and mail correspondences with the attorneys of the Firm. He further avers that throughout the litigation, the Trust was doing business in New York.
Plaintiffs also rely upon an affidavit submitted by Kodsi in which he alleges that he is a resident of Kings County and that he maintains an office there. He further avers that he was responsible for retaining the Firm to represent himself and the Trust in the Illinois action and that the Firm first appeared therein in July 2002. He paid the Firm a retainer of $50,000 in January 2004 and he and the Firm entered into an agreement for a fixed fee of $67,000 in March 2004 to represent him *879 through the trial. Kodsi further alleges that the trustee of the Trust also entered into a fee agreement for $133,000 with the Firm. On at least three occasions, during the winter of 2004 and the spring of 2005, Kodsi recalls that Dunlap came to New York to conduct meetings with him, in his individual capacity and as the agent for Greco, in his individual capacity and as trustee for the Trust, in connection with the Illinois action and litigation conducted in Pennsylvania; Fisher was allegedly present at at least one meeting in New York. Kodsi also avers that during these meetings, Dunlap discussed the Trust using the Firm for other legal matters.
Plaintiffs further argue that they should be afforded the opportunity to conduct discovery in order to establish jurisdiction before the court issues a decision granting the pending motion.
Defendants’ Reply
In reply, defendants allege that in opposition to their motion, plaintiffs submit false affidavits regarding Dunlap’s and Fisher’s alleged visits to New York in connection with the Illinois action. To support this assertion, defendants allege that Kodsi’s affidavit is insufficient because he fails to identify any of the dates on which these meetings occurred. Defendants also attach an affidavit from Robert S. Horvath, the chief financial officer of the Firm, to demonstrate that neither Dunlap nor Fisher traveled to New York for meetings with Kodsi in connection with the Illinois action. Dunlap did travel to New York on one occasion, on August 3 and 4, 2005, in connection with another case. Although Fisher traveled in connection with the Illinois action on 20 occasions, none of the trips were to New York and he did not travel into this state on any other matters during 2004 and 2005. Both Dunlap and Fisher traveled to Ohio to meet with Kodsi on May 19, 2005 and January 5, 2006. Defendants also attach affidavits from Dunlap and Fisher which further support the allegations made by Horvath with regard to the travel of each of them.
The Law
In arguing that this court may exercise jurisdiction over the Ulmer defendants, plaintiffs rely upon New York State’s long-arm statute, CPLR 302. That statute provides, in pertinent part, that:
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal *880 jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
“2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
“3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
“(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
“(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
“4. owns, uses or possesses any real property situated within the state.” (CPLR 302.)
In interpreting this provision, it has been held that “[generally, a nondomiciliary is subject to the jurisdiction of a New York court if it has purposefully transacted business within the state, and there is a ‘substantial relationship’ between this activity and the plaintiffs cause of action’ ” (Cornely v Dynamic HVAC Supply, LLC, 44 AD3d 986, 986 [2007], quoting Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988]). “Purposeful activities are those with which a defendant, through volitional acts, ‘avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws’ ” (Fischbarg v Doucet, 9 NY3d 375, 380 [2007], quoting McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967]). Hence, one is subject to the jurisdiction of the courts of this state because “ ‘he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by “the benefits and protections” of the forum’s laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well’ ” (SmartPros, Ltd. v Straub, 24 AD3d 653, 654-655 [2005], quoting Burger King Corp. v Rudzewicz, 471 US 462, 476 [1985] [citations omitted]). “What constitutes a ‘transaction of busi *881 ness’ has not been precisely defined, but it is clear that under the right circumstances, a ‘single act’ may constitute a transaction within the ambit of the long-arm statute” (Opticare Acquisition Corp. v Castillo, 25 AD3d 238, 243 [2005]).
As is also relevant herein, if CPLR 302 is relied upon in order to obtain jurisdiction over a defendant:
“[T]he cause of action sued upon must arise out of the transaction (see CPLR 302 [a] [1]; McGowan v Smith, [52 NY2d 268], 272). As the Court of Appeals has instructed, ‘[e]ssential to the maintenance of a suit against a nondomiciliary’ under CPLR 302 (a) (1) is ‘the existence of some articulable nexus between the business transacted and the cause of action sued upon’ (McGowan v Smith at 272; see Johnson v Ward, 4 NY3d 516, 519 [2005] [under CPLR 302 (a) (1), a ‘substantial relationship’ must be established between a defendant’s transactions in New York and a plaintiffs cause of action]).” (Opticare Acquisition, 25 AD3d at 246.)
In order to sustain jurisdiction over a nondomiciliary in this state under CPLR 302, a second prong must also be met, i.e., “it is necessary that the Due Process Clause of the United States Constitution be satisfied insofar as the basis of the exercise of long-arm jurisdiction must be a defendant’s ‘ “minimum contacts” with the state and must comport with “traditional notions of fair play and substantial justice” ’ ” (Liberatore v Calvino, 293 AD2d 217, 220 [2002], quoting Agency Rent A Car Sys., Inc. v Grand Rent A Car Corp., 98 F3d 25, 32 [1996] [citations omitted]). Stated differently, “[a]s the United States Supreme Court has made clear, a state may exercise personal jurisdiction over a nondomiciliary defendant provided that it has certain ‘minimum contacts’ with the forum ‘such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice’ ” (Opticare Acquisition, 25 AD3d at 247, quoting International Shoe Co. v Washington, 326 US 310, 316 [1945]).
In addition, it has been noted that
“[t]he test for ‘minimum contacts’ has been refined over the years to whether a defendant’s ‘ “conduct and connection with the forum State” ’ are such that it ‘ “should reasonably anticipate being haled into court there” ’ (LaMarca v Pak-Mor Mfg. Co., [95 NY2d 210,] 216, quoting World-Wide Volkswagen Corp. v Woodson, 444 US 286, 297 [1980]). Put an *882 other way, the decisions under the Due Process Clause are designed to ensure that a defendant is not dragged into a jurisdiction to answer in litigation brought there as a result of ‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts (Burger King Corp. v Rudzewicz, 471 US 462, 475 [1985]).” (Opticare Acquisition, 25 AD3d at 247.)
Hence, by way of example, it has been held that New York’s exercise of personal jurisdiction over a salesperson hired by a New York corporation to represent it in Texas and several other southern states in an action commenced by the corporation alleging that the salesperson breached the parties’ nondisclosurenonsolicitation agreement was appropriate, explaining that
“[t]he defendant ‘ “deliberately” has engaged in significant activities within [New York], or has created “continuing obligations” between himself and residents of [New York].’ Consequently, ‘he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the “benefits and protections” of the forum’s laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well’ (Burger King Corp. v Rudzewicz, 471 US 462, 475-476 [1985] [internal quotation marks omitted; citations omitted]). Here, the defendant purposefully came into New York seeking employment by a New York company and was hired by that company. All of his subsequent activities on behalf of that employer were directed to or from New York. It is not unreasonable for the defendant to expect that if he somehow wronged his New York employer he would be sued in New York for that conduct.” (SmartPros, 24 AD3d at 654-655.)
As is of particular relevance herein, however, it has also been held “[telephone calls and written communications, which generally are held not to provide a sufficient basis for personal jurisdiction under the long-arm statute, must be shown to have been ‘used by the defendant to actively participate in business transactions in New York’ ” (Liberatore, 293 AD2d at 220, quoting Levisohn, Lerner, Berger & Langsam, v Medical Taping Sys., Inc., 10 F Supp 2d 334, 340 [1998], quoting Carlson v Cuevas, 932 F Supp 76, 78 [1996], and citing Wilhelmshaven Acquisition Corp. v Asher, 810 F Supp 108, 112 [1993] [telephone and mail contacts are jurisdictionally insufficient unless the defendant “projected” himself by those means into New York in such a *883 manner that he purposefully availed himself of the benefits and protections of its laws]; see also Warck-Meister v Diana Lowenstein Fine Arts, 7 AD3d 351, 352 [2004] [various telephone, fax and e-mail communications upon which plaintiff relied, purportedly concerning defendants’ exhibition and sale of her art, were not adequate transactional predicates for an assertion of jurisdiction under CPLR 302 (a) (1)]; Granat v Bochner, 268 AD2d 365 [2000] [the court properly dismissed the complaint based on plaintiffs failure to establish that defendants transacted business within the state, subjecting them to jurisdiction under CPLR 302 (a) (1), since sending faxes and making phone calls to this state are not, without more, activities tantamount to “transacting business” within the meaning of the long-arm statute]).
Similarly, numerous other contacts with this state have been held insufficient to support a finding of jurisdiction. Hence, it has been held that where “a defendant has signed a contract outside of this State, a court cannot exercise jurisdiction over that defendant pursuant to CPLR 302 (a) (1) based simply on the circumstance that the plaintiff signed in New York” (Libra Global Tech. Servs. [UK] v Telemedia Intl., 279 AD2d 326, 327 [2001], citing Standard Wine & Liq. Co. v Bombay Spirits Co., 20 NY2d 13, 17 [1967]; A. Millner Co. v Noudar, Lda., 24 AD2d 326, 329-330 [1966]). In like fashion, it has been held that “where the services contracted for are to be performed outside of New York, the mere fact that a party to the contract is a New York domiciliary does not suffice to invoke the court’s jurisdiction pursuant to CPLR 302 (a) (1)” (Sorezza v Scheuch, 19 Misc 3d 1138[A], 2008 NY Slip Op 51055[U], *4 [2008], citing Finesurgic Inc. v Davis, 148 AD2d 414, 415 [1989], lv dismissed in part and denied in part 74 NY2d 781 [1989]). Nor is the
“mere solicitation of business within the state [sufficient to] constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state (cf. Kaczorowski v Black & Adams, 293 AD2d 358 [2002]), or the solicitation is accompanied by a fair measure of the defendant’s permanence and continuity in New York which establishes a New York presence” (O’Brien v Hackensack Univ. Med. Ctr., 305 AD2d 199, 201 [2003]).
It must also be recognized, however, that while “plaintiffs own activities in New York cannot be relied upon to establish the *884 presence of the defendant in the State, recent cases suggest that this rule is not rigidly applied when a defendant directs or sets in motion plaintiffs activities in New York.” (Pryor Personnel Agency v Waage Law Firm, 2008 NY Slip Op 31057[U], *7 [2008], citing Fischbarg v Doucet, 38 AD3d 270 [2007]; Kaczorowski, 293 AD2d 358 [2002].)
Finally, in order “[t]o successfully oppose a pre-answer motion to dismiss a complaint pursuant to CPLR 321 (a) (8), ‘the plaintiff need only make a prima facie showing that personal jurisdiction exists’ ” (Crystal Cove Seafood Corp. v Chelsea Harbor, LLC, 47 AD3d 670, 670 [2008], quoting Opticare Acquisition, 25 AD3d at 243; accord Lang v Wycoff Hgts. Med. Ctr., 55 AD3d 793, 794 [2008], quoting Cornely, 44 AD3d at 986).
Discussion
Applying the principles of law discussed above, the court first notes that jurisdiction may not be supported pursuant to CPLR 302 (a) (2), since plaintiffs do not argue that the Ulmer defendants committed a tortious act within New York State, but instead base their action upon the Firm’s alleged acts of malpractice committed in defending the Illinois action in Illinois (see generally Pell v Clarke, 1994 WL 74075, 1994 US Dist LEXIS 2668 [1994] [long-arm jurisdiction was not found where there were no allegations that the firm committed any tortious act while physically present in New York and all of the alleged tortious acts occurred as a direct result of communications that the firm made outside of New York through allegedly fraudulent communications into New York by telephone or by mail]). Similarly, jurisdiction may not be premised upon CPLR 302 (a) (4), since plaintiffs fail to make a prima facie showing that the Ulmer defendants own any property in this state. Hence, plaintiffs assertion that the court may properly exercise jurisdiction over the Ulmer defendants must be premised upon the ground that they transacted business here, pursuant to CPLR 302 (a) (1), or that they committed a tortious act without the state that caused injury within the state, and that they regularly do or solicit business here, engage in any other persistent course of conduct or that they derive substantial revenue from goods used or consumed or services rendered, pursuant to CPLR 302 (a) (3).
In making the determination with regard to whether jurisdiction may be supported under these tests, the court notes that the papers submitted on the instant motion establish that the *885 Firm has its headquarters in Cleveland, Ohio; it maintains no offices in this state; it solicits no business here; and neither Greco nor Kodsi solicited the Firm in this state. In addition, the action in which the plaintiffs claim that malpractice was committed was litigated in Cook County, Illinois and neither Dunlap nor Fisher are licensed to practice law here (cf. Kaczorowski, 293 AD2d 358 [2002] [plaintiff sufficiently established that defendant was subject to the jurisdiction of New York courts pursuant to CPLR 302 (a) (1) in view of the evidence that demonstrated that plaintiff was solicited by defendant in New York for the purpose of rendering legal services; that subsequent to his retention by defendant, plaintiff was repeatedly consulted in New York by defendant respecting the matter in which he was retained; and that the subject action was brought to obtain payment for services rendered by plaintiff in the very matter in connection with which plaintiff was solicited and retained by defendant]). In addition, the business relationship between Sullivan, Kodsi and Gracias that gave rise to the Illinois action had no connection to New York.
Also significant is the fact that when the Firm agreed to represent the trustee and the Trust, the trustee was a Delaware entity. The Firm agreed to represent plaintiffs only after Greco was replaced as the trustee of the Trust, as an accommodation to him and Kodsi, until Greco retained other counsel; the representation lasted less than six months; and Greco ultimately replaced the Firm with counsel in Chicago. It must also be noted that there is no allegation that the Firm earns a significant amount of income in this state. Accordingly, this case is clearly distinguishable from those in which a defendant was found to have purposefully availed himself of business opportunities in this state (cf. Alden Personnel, Inc. v David, 38 AD3d 697, 698 [2007] [plaintiffs made a prima facie showing that defendant transacted business in New York in connection with their causes of action where the complaint identified an employment contract between the parties demonstrating that the defendant purposefully entered into an employment arrangement with the plaintiffs, both New York corporations, with their principal places of business in New York, and defendant admitted that he worked in the plaintiffs’ offices in New York, but merely argued that he was a Connecticut resident and that most of his contacts and clients were located there, so that he was subject to long-arm jurisdiction pursuant to CPLR 302 (a) (1)]; Olympus Am., Inc. v Fujinon, Inc., 8 AD3d 76, 76 [2004] [defendants trans *886 acted business in this state so that pursuant to CPLR 302 (a) (1), jurisdiction was acquired over defendant employee, a nonresident, in connection with his employment, where it was found that he “project(ed) himself into local commerce” by generating sales between the New York headquarters and the customers in his territories through the phone calls and e-mails he regularly made or sent to New York and that by virtue of these communications, he generated a stream of local commerce, from which he earned his livelihood, so that he was more than a passive participant because he played a crucial role in creating the substance of these transactions]).
Further, it appears clear that if the Ulmer defendants were a New York firm retained by an out-of-state client, the Firm would be able to assert jurisdiction over the client for any matters arising out of the representation. Hence, for example, it has been held that personal jurisdiction may be sustained under CPLR 302 (a) (1) where nondomiciliary defendants sought legal advice from plaintiff, a New York attorney, regarding an Oregon copyright case, by telephone calls, facsimile transmissions, mail and courier communications, on a consistent basis over a period of approximately one year (Fischbarg v Doucet, 38 AD3d 270, 273-275 [2007], affd 9 NY3d 375 [2007]; see also Kaye, Scholer, Fierman, Hays & Handler v Dreyfuss, 266 AD2d 51 [1999] [the individual defendant’s numerous trips to New York for the specific purpose of meeting with plaintiff to obtain legal services on behalf of the corporate defendants constituted purposeful activity sufficient to confer jurisdiction over himself as well as the corporate defendants]; Colucci & Umans v 1 Mark, 224 AD2d 243 [1996] [in an action to recover a legal fee in connection with plaintiffs representation of defendants in a federal court action in New York, a basis for jurisdiction over the out-of-state corporate defendant existed by reason of its retention of plaintiff law firm to represent it in a New York proceeding, its participation in that proceeding by way of numerous telephone calls and visits to New York by its registered agent and its retention of other attorneys in New York to continue the representation]). Similarly, long-arm jurisdiction has been sustained in a legal malpractice action under circumstances where an out-of-state attorney drafted a partnership agreement intended for use in New York, but provided all services by mail and telephone from outside of New York (Schur v Porter, 712 F Supp 1140 [1989]). As is also relevant herein, in another case, an Illinois corporation was found to have transacted business in New York *887 where its attorneys, conducting all activities from Chicago by mail and telephone over a three-year period, instructed its retained New York attorneys as to prosecution of a New York case (Kazlow & Kazlow v Goodman & Co., 92 Misc 2d 1084 [1977]). In like fashion, an Illinois resident who never entered New York personally was found to have engaged in purposeful activity in New York by retaining New York attorneys to bring a New York action to collect on Illinois judgments (Elman v Belson, 32 AD2d 422 [1969]). These cases are clearly distinguishable from the matter now before the court, however, since defendants in all of these cases purposefully reached into New York State to retain an attorney practicing law in New York.
Accordingly, the court finds that the fact situation presented here is analogous to that of Mayes v Leipziger (674 F2d 178, 185 [1982]), a case relied upon by movants in support of their position. Therein, the Second Circuit Court of Appeals dismissed a client’s malpractice action against her lawyers for lack of personal jurisdiction, finding no merit in her contention that CPLR 302 (a) (1) gave the court jurisdiction because the lawyers transacted business in New York in person as well as through an agent. In so holding, the court reasoned that
“so far as we are aware, no court has extended § 302 (a) (1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York. We do not believe that in these circumstances the New York courts would exercise jurisdiction solely on the basis that the defendants, from California, reported to their New York client and sought the wherewithal (i.e., funds, authority, and information) by means of letters and calls to New York to perform their non-New York services.” (Mayes, 674 F2d at 185.)
Similarly, the court finds another case relied upon by movants, Pell (1994 WL 74075, 1994 US Dist LEXIS 2668 [1994]), to be equally persuasive. In that case, the United States District Court for the Southern District of New York held that it lacked jurisdiction over a law firm under the circumstance where a man, who later became a resident of New York, contacted a law firm in London to solicit help in acquiring a *888 company, relying upon the facts that the firm had no offices in New York, none of the attorneys were members of the New York bar, and it only communicated with the resident by telephone and by writings mailed to New York. Hence, it was held that defendants did not “project themselves” into New York through their communications with plaintiff, reasoning, as is relevant herein, that “[t]he courts have consistently held that merely sending letters and making telephone calls to New York are not by themselves sufficient to impose jurisdiction under § 302 (a) (1)” (Pell, 1994 WL 74075, *4, 1994 US Dist LEXIS 2668, *14 [1994], citing Foremost Guar. v Public Equities, 1988 WL 125667, *3 [1988]; L. F. Rothschild, Unterberg, Towbin v McTamney, 89 AD2d 540 [1982], affd 59 NY2d 651 [1983]; Beacon Enters., Inc. v Menzies, 715 F2d 757, 766 [1983]; see also Mayer, Brown & Platt v Quirk, 226 AD2d 189 [1996] [where the underlying criminal action was prosecuted, the retention of counsel arranged and most of the attorney-client meetings conducted in Massachusetts, defendant client did not engage in purposeful activity in New York]).
Hence, the court concludes that the Ulmer defendants are not subject to the jurisdiction of the courts of New York. In so holding, the court rejects plaintiffs’ contentions that the Ulmer defendants are subject to jurisdiction here on the basis of meetings held between Kodsi and Dunlap or Fisher in New York State. In the first instance, Kodsi is not a plaintiff in the instant action, so that any meetings that he may have had with the Ulmer defendants are irrelevant to a determination of whether movants are subject to jurisdiction here. Further, although Greco and Kodsi claim that Kodsi was an agent for Greco and/or the Trust, no factual or evidentiary support is offered to support this conclusory allegation (see generally Sedig v Okemo Mtn., 204 AD2d 709, 710 [1994] [there was no merit to plaintiffs claim that an agency relationship existed between the defendant and the subject New York ski shops which displayed its posters and brochures and received complimentary ski passes because there was no evidence that the shops had authority to contractually bind the defendant and thus serve as its agents for jurisdictional purposes]). Also significant is the court’s finding that Kodsi’s claim that he met with Dunlap and/or Fisher in New York is patently incredible in view of the fact that he fails to provide any details with regard to the alleged meetings as, for example, the dates, locations or purpose. Moreover, movants’ submission of expense records for Dunlap and Fisher, as cor *889 roborated by their affidavits and that of their chief financial officer, are adequate to belie this unsupported allegation.
Further, even assuming, arguendo, that Dunlap and/or Fisher met with Kodsi in New York on a few occasions, and further assuming that Kodsi was an agent of Greco, such meetings are not sufficient to subject the Ulmer defendants to the jurisdiction of this court:
“To establish jurisdiction in New York based on a meeting or meetings in that state, the meeting or meetings must be essential to the formulation of a business relationship. Kahn Lucas Lancaster, Inc. v. Lark International Ltd., 956 F.Supp. 1131, 1136 (S.D.N.Y. 1997). ‘When the visit ... is not for the purpose of initiating or forming a relationship, but is to alleviate problems under a pre-existing relationship, New York courts have declined to assert jurisdiction.’ United States Theatre v. Gunwyn/ Landsburgh Ltd., 825 F.Supp 594 S.D.N.Y. 1993 (citing McKee Electric Co. v. Rauland-Borg Corp., [20 NY2d 377 (1967)]). In addition, meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state. PaineWebber Inc. v. WHV, Inc., 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995).” (United Computer Capital Corp. v Secure Prods., L.P., 218 F Supp 2d 273, 278 [2002]; see also Cantor Fitzgerald, L.P, v Peaslee, 88 F3d 152, 156 [1996] [meetings within this state are sufficient to invoke the jurisdiction of the New York courts only if the meeting was “essential to the formation or continuance” of any business relationship].)
Accordingly, even if the alleged meetings did take place, there is no support for the claim that they were “essential to the formation or continuance” of the relationship between the Ulmer defendants and plaintiffs, since they took place long after the Firm began its representation of the Trust and its trustee.
Moreover, even if the meetings did take place, the court finds that the circumstances of this case, when viewed in their totality, are insufficient to subject the Ulmer defendants to the jurisdiction of this court because the minimum contacts necessary to meet due process requirements have not been met. As discussed above, the Firm was retained to defend an action pending in Cook County, Illinois; its clients had no contacts with this state; the business relationship that resulted in that action had *890 no nexus with New York State; the Ulmer defendants have no connections with this state; no work on the Illinois action was performed in this state; and the Illinois action did not impact upon any interests held by any parties within this state. More significantly, the Ulmer defendants’ representation of Greco was purely random or fortuitous, i.e., the Firm agreed to continue to represent Greco for a brief period of time after he was substituted as the trustee for the Trust as an accommodation to him and to its former clients. As such, the court declines to find that the Ulmer defendants’ conduct is such that they “ ‘ “should reasonably anticipate being haled into court there” ’ ” (Opticare Acquisitions, 25 AD3d at 247, quoting LaMarca, 95 NY2d at 216, quoting World-Wide Volkswagen, 444 US at 297).
Finally, the court further finds that plaintiffs have failed to establish that any facts may exist that would entitle them to pursue discovery to demonstrate that the court should exercise personal jurisdiction over the Ulmer defendants, since they have not made a “sufficient start” to warrant further discovery on the issue of personal jurisdiction over them (see generally Ying Jun Chen v Lei Shi, 19 AD3d 407, 408 [2005]; cf. Napolitano v Mastic Bicycles & Fitness Co., 279 AD2d 461, 462 [2001] [the court properly concluded that plaintiff submitted sufficient facts to demonstrate that defendant engaged in activities which made it at least foreseeable that its products would be marketed and found in New York, thereby possibly subjecting it to personal jurisdiction]). More specifically, “neither the complaint nor the plaintiffs’ opposition papers have set forth even conclusory allegations regarding a prospective basis upon which the court could exercise in personam jurisdiction over the defendant” (Mandel v Busch Entertainment Corp., 215 AD2d 455 [1995]). Hence, since plaintiffs fail “to offer ‘some tangible evidence which would constitute a “sufficient start” in showing that jurisdiction could exist, thereby demonstrating that its assertion that a jurisdictional predicate exists is not frivolous,’ ” no further discovery on the issue of jurisdiction is appropriate (SNS Bank v Citibank, 7 AD3d 352, 354 [2004], quoting Mandel, 215 AD2d at 455; see also Granat, 268 AD2d 365 [2000] [plaintiff was not entitled to additional discovery on the jurisdictional issue since she failed to come forward with tangible evidence sufficing to demonstrate that long-arm jurisdiction over defendants may have existed]).
*891 Conclusion
Accordingly, the Ulmer defendants’ motion to dismiss the action as against them is granted. All other claims shall be severed and shall continue.

. The court notes that both the Firm and Fisher were improperly named in the summons and complaint.

. The Ulmer defendants allege that in making the instant motion, they are appearing for the limited purpose of challenging this court’s jurisdiction over them and they do not accede to personal jurisdiction for any other purposes. Accordingly, they reserve their right to move to dismiss the complaint on other grounds if the instant motion is not granted. Hence, the papers before the court do not address the claim that the action is barred by the applicable statute of limitations.

. The court notes that the retainer agreements annexed to plaintiffs’ complaint and the papers submitted on the instant motion are signed by the Firm, but not by plaintiffs.